IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 20–cv–00052–CMA–KMT

WESTERN ACCEPTANCE, LLC,

    Plaintiff,

v.

GENERAL AGRICULTURE INC. F/K/A GENERAL AGRICULTURE LLC,
SONOMA STAINLESS, INC.,
STIG WESTLING,
CALLAGHAN BECKER, and
PHIL TAGAMI,

    Defendants.

---

## ORDER

Before the court are two motions: (1) "General Agriculture, Inc.'s Motion to Stay Discovery until Recommendations on Dispositive Motions," filed by Defendant General Agriculture, Inc. ["Gen Ag"]; and (2) "Defendant Phil Tagami's Motion for Temporary Stay Pending Resolution of Tagami's Motion to Dismiss Pursuant to 12(b)(2) and 12(b)(6)," filed by Defendant Phil Tagami. (["Gen Ag Motion"], Doc. No. 80; ["Tagami Motion"], Doc. No. 90.) Plaintiff Western Acceptance, LLC ["Western Acceptance"] has responded in opposition to both motions, and Defendant Gen Ag has replied.[1] (["Response to Gen Ag Motion"], Doc. No. 86; ["Reply"], Doc. No. 87; ["Response to Tagami Motion"], Doc. No. 100.) Defendant Sonoma

---

[1] No reply to Defendant Tagami's motion was permitted. (*See* Doc. No. 93.)

Stainless, Inc. ["Sonoma"] has filed a joinder in support of Defendant Gen Ag's motion. (Doc. No. 82.) For the following reasons, both motions are GRANTED.

## STATEMENT OF THE CASE

In this commercial dispute, Plaintiff Western Acceptance has sued two entities, Defendants Gen Ag and Sonoma, as well as three individuals—Defendants Stig Westling, Callaghan Becker, and Phil Tagami—for breach of contract, civil theft, conspiracy, conversion, and unjust enrichment. (["Amended Complaint"], Doc. No. 41 at ¶¶ 1-16, 33-73.) According to the First Amended Complaint, on September 6, 2018, Plaintiff paid SXIP, LLC ["SXIP"][2] approximately $2 million to design and manufacture certain business equipment ["the Equipment"]. (*Id.* at ¶¶ 20, 34; *see* Doc. No. 48-2.) In connection with the transaction, the parties executed a Machine Purchase Agreement ["MPA"], which detailed, among other things, the terms of payment, remedies for default, and conditions for closing. (Doc. No. 48-2; *see* Am. Compl. ¶ 34.) Section 12 of the MPA delineates mandatory dispute resolution procedures for "any dispute or controversy concerning this Agreement or the rights of the parties under this Agreement." (Doc. No. 48-2 at 7.)

Following the execution of the MPA, "[a]t some point in time during the manufacturing of the [Equipment]," Plaintiff reportedly learned that SXIP had been "acquired by" Defendant Gen Ag. (Am. Compl. ¶ 22.) Western Acceptance thereafter "began dealing directly" with Gen Ag with respect to the manufacture of the Equipment, and Gen Ag "took monies directly from" Western Acceptance. (*Id.* at ¶¶ 22, 26.) In addition, one of Gen Ag's "agents," Defendant Phil

---

[2] Although SXIP was initially named as a Defendant in this case, all claims against it have been dismissed, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). (*See* Doc. No. 83.)

2

Tagami, reportedly began visiting Western Acceptance's facility in Colorado Springs "multiple times under the guise of being a compliance consultant for Gen Ag." (*Id.* at ¶¶ 23-25.) According to the First Amended Complaint, during one such visit, Defendant Tagami "attempt[ed] to take" the subject Equipment, by disingenuously advising Plaintiff "to move its entire operation" to another facility. (*Id.*) It is alleged that, subsequent to these events, Defendants took the Equipment out of state without Plaintiff's authorization or consent. (*Id.* at ¶¶ 27, 30-32.) To date, Defendants reportedly "refuse to tell Plaintiff where the property is and refuse[] to return to the property to Plaintiff." (*Id.* at ¶ 32.)

Based on these allegations, on January 7, 2020, Plaintiff commenced this lawsuit. (Doc. No. 1.) In the First Amended Complaint, Plaintiff asserts the following claims against the remaining five Defendants:[3] (1) breach of contract by Sonoma; (2) breach of contract by Gen Ag; (3) negligence by Sonoma; (4) civil theft by Gen Ag; (5) conspiracy by Gen Ag, Stig Westling, Callaghan Becker, and Phil Tagami; (6) conversion by all Defendants; and (7) unjust enrichment by all Defendants. (Am. Compl. ¶¶ 33-73.) As relief, Plaintiff requests compensatory damages, interest, costs, and attorneys' fees. (*Id.* at 12.)

On April 23, 2020, Defendant Gen Ag responded to Plaintiff's allegations by filing a motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), as well as a motion to compel mediation, in the alternative.[4] (Doc. Nos. 47-48.) In the motion to dismiss,

---

[3] The First Amended Complaint initially named fifteen Defendants, ten of whom have since been dismissed. (Am. Compl. ¶¶ 1-16; *see* Doc. Nos. 54-56, 63, 83, 95-99.)

[4] Defendant Gen Ag titled its second motion, "Motion to Stay the Case to Give Effect to a Contractual Mandatory Mediation Provision," though it is more accurately described as a motion to compel mediation. Defendant Gen Ag's present motion is similarly titled, "Motion to Stay Discovery until Recommendations on Dispositive Motions." For the sake of clarity, the "Motion

Defendant Gen Ag argues, among other things, that the court lacks subject matter jurisdiction, due to a lack of complete diversity between the parties. (Doc. No. 47 at 4-5.) Defendant Gen Ag contends, specifically, that Plaintiff and SXIP "are both citizens of Colorado for jurisdictional purposes." (*Id.* at 5.) In the motion to compel mediation, Defendant Gen Ag argues that Plaintiff's claims are all subject to certain mandatory dispute resolution provisions contained within the MPA. (Doc. No. 48 at 4-5.) Defendant Gen Ag contends that the terms of the MPA obligate Plaintiff to submit its claims to nonbinding mediation. (*Id.* at 3.)

Defendants Tagami and Sonoma likewise filed their own motions to dismiss, on April 21, 2020, and April 23, 2020, respectively. (Doc. Nos. 43, 49.) Defendant Tagami brings his motion to dismiss, pursuant to Rule 12(b)(2), for lack of personal jurisdiction, and pursuant to Rule 12(b)(6), for failure to state a claim. (Doc. No. 43 at 5-13.) Defendant Sonoma's motion to dismiss likewise asserts a lack of personal jurisdiction, improper venue, and inadequate pleading. (Doc. No. 49 at 5-15.) All four motions—Gen Ag's motion to dismiss, Gen Ag's motion to compel mediation, Tagami's motion to dismiss, and Sonoma's motion to dismiss—are fully briefed and pending. (*See* Doc. Nos. 59-62, 69, 73-75.)

On June 8, 2020, this court held a Scheduling Conference and entered a Scheduling Order, which set certain pretrial dates, including a deadline of October 28, 2020 by which to disclose affirmative experts, a deadline of November 25, 2020 by which to designate rebuttal experts, and a deadline of January 27, 2021 by which to complete discovery. (Doc. Nos. 78 at 2;

---

to Stay Discovery until Recommendations on Dispositive Motions" will be referred to as a "motion to stay," while the "Motion to Stay the Case to Give Effect to a Contractual Mandatory Mediation Provision," will be referred to as a "motion to compel mediation."

4

Doc. No. 79 at 11-12.)  The Scheduling Order identifies at least eight nonparty individuals that the litigants intend to depose, and provides that discovery will likely involve "a substantial amount of electronically stored information, such as email communication, invoices, and payment information, that will need to be located and potentially disclosed."  (Doc. No. 79 at 9, 12-14.)  At the Scheduling Conference, this court denied a request generally made within the Scheduling Order to stay discovery pending resolution of the four outstanding motions.  (Doc. No. 78 at 1; *see* Doc. No. 79 at 11, 14.)

One day after the Scheduling Conference, on June 9, 2020, Defendant Gen Ag filed its present motion, asking that discovery in this matter be put on hold, until after the court's resolution of its two previously filed motions.  (Gen Ag Mot. 1-3.)  Defendant Gen Ag argues that a discovery stay is appropriate in this case, because its motion to dismiss, if fully granted, would "resolve this federal court action in its entirety."  (Reply 3; *see* Gen Ag Mot. 5.)  Defendant Gen Ag likewise contends that the motion to compel mediation, if granted, would not only divest the court of subject matter jurisdiction, but would also result in the transfer of this case to a forum with "substantially different discovery rules and procedures."  (Gen Ag Mot. 1-2, 5.)  According to Defendant Gen Ag, in either case, the claims against it "will be completely dismissed and will not be litigable in federal court."  (*Id.* at 1-2.)  Defendant Gen Ag is adamant that additional discovery at this stage in the proceedings "could therefore be both wasteful and prejudicial."  (*Id.* at 5.)

On June 10, 2020, Defendant Sonoma filed a joinder to Defendant Gen Ag's motion to stay.  (Doc. No. 82.)  In the joinder, Defendant Sonoma requests a stay of discovery pending resolution of all four outstanding motions.  (*Id.* at 2.)  Defendant Sonoma insists that it is "an

innocent bystander" in this case. (*Id.* at 1.) According to Defendant Sonoma, "[it] appears that the central dispute in this case is between Gen Ag and Plaintiff, and that this dispute is governed by binding mediation and arbitration provisions." (*Id.* at 2.) Defendant Sonoma contends, for that reason, that "it is unlikely" that Plaintiff's claims against it will ultimately proceed in this District. (*Id.*)

On June 17, 2020, Plaintiff filed a response to Defendant Gen Ag's motion to stay, asserting that all pertinent factors "weigh in favor of allowing discovery to go forward" in this case. (Resp. to Gen Ag Mot. 2.) Plaintiff argues, particularly, that the jurisdictional issues raised in Defendant Gen Ag's motion to dismiss are "now moot," given that SXIP is no longer a party in this case. (*Id.*) Western Acceptance likewise contends that Gen Ag's motion to compel mediation is "meritless," and that Sonoma's joinder "does not add any substantive arguments or evidence" to the contrary. (*Id.*) Finally, Plaintiff argues that Defendant Gen Ag's two previously filed motions, even if granted, "would not fully resolve this case." (*Id.* at 7.)

On June 29, 2020, Defendant Tagami filed a separate motion to stay discovery as to Plaintiff's claims against him, pending resolution of his own motion to dismiss. (Tagami Mot. 1.) Defendant Tagami argues that he is entitled to a discovery stay, specifically, because his motion to dismiss exclusively addresses "two threshold issues of law," and because "no additional discovery is required to answer the two questions of law." (*Id.* at 2, 6-8.) In making that argument, Defendant Tagami stresses his belief that "there is no indication on the face of the [motion to dismiss] that it is likely to ultimately fail." (*Id.* at 8-9.) Finally, Defendant Tagami claims that his entitlement to a stay is "further heightened" by "Plaintiff's apparent lack of interest in Tagami discovery," given that Plaintiff "failed to pose a sincere challenge to the

6

Tagami [motion to dismiss] with any relevant declarations, points of law, or any documents whatsoever." (*Id.* at 2.)

On July 6, 2020, Plaintiff filed a response to Defendant Tagami's motion, restating its position that discovery in this matter should proceed. (*See generally* Resp. to Tagami Mot. 1-9.) In the response, Plaintiff describes Defendant Tagami's motion to dismiss as "nothing special," and argues that the motion to dismiss is predicated upon "incorrect assertions of Colorado law related to jurisdiction." (*Id.* at 1.) Plaintiff likewise contends that Defendant Tagami's motion to stay "does not set forth any particularized reason why discovery should be stayed in this case due to some circumstances that he faces that are different than defendants in any litigation." (*Id.* at 1-2.)

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure do not expressly provide for a stay of proceedings. Rule 26(c), however, permits a court to "make an order which justice requires to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Further, "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) (citing *Kan. City S. Ry. Co. v. United States*, 282 U.S. 760, 763 (1931)).

In this District, a stay of discovery is generally disfavored. *See, e.g.*, *Rocha v. CCF Admin.*, No. 09-cv-01432, 2010 WL 291966, at *1 (D. Colo. Jan. 20, 2010); *Jackson v. Denver Water Bd.*, No. 08-cv-01984, at *1 (D. Colo. Dec. 15, 2008); *Chavez v. Young Am. Ins. Co.*, No. 06-cv-02419, at *2 (D. Colo. Mar. 2, 2007). Nevertheless, the decision whether to stay

7

discovery rests firmly within the sound discretion of the court. *United Steelworkers of Am. v. Or. Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003) (quoting *Landis*, 299 U.S. at 254).

In ruling on a motion to stay discovery, five factors are generally considered: "(1) [the] plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to [the] plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 02-cv-01934, 2006 WL 8949955, at *2 (D. Colo. Mar. 30, 2006); *see United Steelworkers*, 322 F.3d at 1227. Further, "a court may decide that in a particular case it would be wise to stay discovery on the merits until [certain challenges] have been resolved." 8A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2040, at 198 (3d ed. 2010).

## ANALYSIS

### *Factor 1 – Prejudice to Plaintiff*

Here, as to the first factor, Plaintiff insists that it has proceeded expeditiously with discovery thus far. (Resp. to Gen Ag Mot. 4; Resp. to Tagami Mot. 5.) Plaintiff complains that a delay in discovery "increases the likelihood that the evidence in possession of non-parties is lost." (Resp. to Gen Ag Mot. 4.) In addition, Plaintiff stresses that "memories fade" with the passage of time. (*Id.*) Plaintiff posits that the imposition of a stay in this case "would mean depositions potentially not starting until 2021." (*Id.*) According to Plaintiff, "there is a high likelihood that an entirely new scheduling order will be needed that would potentially push the trial of this matter into 2022." (*Id.*; Resp. to Tagami Mot. 5.) Plaintiff contends that a discovery stay would also cause it to suffer "additional great financial harm," because its injury from

8

Defendants' alleged misconduct "remains ongoing." (Resp. to Gen Ag Mot. 4-5; Resp. to Tagami Mot. 5.)

Defendant Gen Ag, for its part, insists that "there is no compelling reason why a temporary discovery stay might prejudice Plaintiff." (Gen Ag Mot. 6.) It contends that any assertion made by Plaintiff to the contrary is "undercut" by the fact that, as of the filing of the motion to stay, six Defendants remained unserved.[5] (*Id.*) Defendant Gen Ag likewise stresses that "Plaintiff could have sought a default judgment against Gen Ag in February or March—but did not." (*Id.*) In addition, Defendant Gen Ag argues that there is no risk of "deteriorating physical evidence or remote memories" in this case, because the dispute involves "companies with data preservation capabilities." (*Id.*)

Defendant Tagami likewise contends that the potential prejudice to Plaintiff from the imposition of a stay would be "minimal," at most. (Tagami Mot. 9.) Indeed, Defendant Tagami argues that Plaintiff would benefit from a temporary suspension of discovery. (*Id.* at 9-10.) According to Defendant Tagami, the imposition of a stay "would permit Plaintiff to align its discovery strategy with its Complaint allegations and devote more time and resources to investigating Plaintiff's primary targets." (*Id.* at 10.)

As to this factor, although Defendant Gen Ag disputes the extent to which Plaintiff has proceeded expeditiously in this case, there is no question that Plaintiff possesses such an interest. *See Chavez v. Young Am. Ins. Co.*, No. 06-CV-02419-PSF-BNB, 2007 WL 683973, at *2 (D.

---

[5] One month after Defendant Gen Ag filed its motion to stay, on July 6, 2020, Plaintiff voluntarily dismissed four out of the six unserved Defendants. (Doc. Nos. 95-99.) That same day, an executed waiver of summons, as to Defendant Callaghan Becker, was filed. (Doc. No. 94.) To date, Defendant Stig Westling remains unserved.

9

Colo. Mar. 2, 2007) (noting that staying discovery pending resolution of a motion to dismiss "could substantially delay the ultimate resolution of the matter, with injurious consequences"). Further, Plaintiff has made a compelling argument of continuous and ongoing injury caused by Defendants' alleged misappropriation of the subject Equipment.  (*See* Resp. to Gen Ag Mot. 4-5.)  On balance, therefore, the court finds the first factor to weigh against the imposition of a stay. *See Genscape, Inc. v. Live Power Intelligence Co. NA, LLC*, No. 18-cv-02525-WYD-NYW, 2019 WL 78933, at *2 (D. Colo. Jan. 2, 2019) (finding the first factor weighed against a stay, where the plaintiff alleged "continuous injury from the alleged misappropriation of its trade secrets"); *Four Winds Interactive LLC v. 22 Miles, Inc.*, No. 16-cv-00704-MSK-STV, 2017 WL 121624, at *2 (D. Colo. Jan. 11, 2017) (finding the first factor to weigh against a stay, because of the plaintiff's interest in proceeding expeditiously, and because a final determination on the motion to dismiss "could take several months"); *United States v. Centerre Gov't Contracting Grp., LLC*, No. 13-CV-02823-CMA-MJW, 2014 WL 1924368, at *8 (D. Colo. May 13, 2014) (finding likely prejudice to the plaintiffs by the imposition of a stay, where the plaintiffs alleged that the defendants caused continuous consequential damages, including financial hardship).

### *Factor 2 – Burden to Defendants*

Turning to the second factor, Defendant Gen Ag argues that it would be unduly burdened by moving forward with discovery, because the issues in this case are "complex," and the discovery burdens, as delineated in the Scheduling Order, will be "substantial."  (Gen Ag Mot. 7.)  Defendant Gen Ag posits that "the parties will likely propound scores of interrogatories, requests for production, and requests for admission, and there will likely be more than a dozen depositions taken."  (*Id.*)  In addition, Defendant Gen Ag contends that "it is highly likely that

[additional] discovery conducted in this case will prove wasteful," given that this case might ultimately be litigated in other fora that have different discovery rules and procedures. (*Id.* at 7-8.)

Defendant Tagami likewise contends that this case "will necessarily demand substantial and burdensome discovery and defense costs[.]" (Tagami Mot. 13.) In making that argument, Defendant Tagami emphasizes that Plaintiff currently intends to depose him for at least seven hours. (*Id.*; *see* Doc. No. 79 at 12.) In addition, Defendant Tagami contends that his "present and continued burden" in this case is particularly "exceptional," given that he is an out-of-state defendant, who presently resides in California. (Tagami Mot. 12.) According to Defendant Tagami, the basic tenets of "fundamental fairness" require that he not be "dragged from his personal life in California and forced to spend additional weeks and thousands in legal fees on discovery and defense before it is even established that he is subject to this court's jurisdiction or liability in Plaintiff's claims." (*Id.*)

Plaintiff, in response, insists that Defendants would suffer "no specific burden" by proceeding with discovery. (Resp. to Gen Ag Mot. 6; Resp. to Tagami Mot. 6.) Plaintiff argues that Defendant Gen Ag's concerns regarding the potential transfer of this case to another forum with incongruent discovery rules are unfounded, given that discovery in the District of Colorado is "coterminous with discovery in California federal court." (Resp. to Gen Ag Mot. 6*.*) Plaintiff likewise dismisses any possibility that this dispute will be submitted for alternative dispute resolution, arguing that Defendant Gen Ag's motion to compel mediation is "meritless." (*Id.*) In addition, Plaintiff argues that potential burdens delineated by Defendant Tagami are "generalized." (Resp. to Tagami Mot. 6.)

11

As to this factor, it must be stressed, first, that a stay is not warranted merely by virtue of a defendant's filing of a purportedly dispositive motion to dismiss. *See PopSockets LLC v. Online King LLC*, No. 19-cv-01277-CMA-NYW, 2019 WL 5101399, at *3 (D. Colo. Oct. 11, 2019); *Church Mut. Ins. Co. v. Coutu*, No. 17-CV-00209-RM-NYW, 2017 WL 3283090, at *3 (D. Colo. Aug. 2, 2017) ("[N]o element of the *String Cheese* factors requires that this court make a preliminary determination as to the likelihood of success of either the dispositive motion or the ultimate merits of the case."). Further, even though the discovery burdens imposed upon the litigants in this case do appear to be significant, they are well within the normal range. *See Webb v. Brandon Exp., Inc.*, No. 09-cv-00792-WYD-BNB, 2009 WL 4061827, at *2 (D. Colo. Nov. 20, 2009) ("Parties are always burdened by discovery and the other requirements for the preparation of a case. That is a consequence of our judicial system and the rules of civil procedure. There is no special burden here.").

With that being said, the court finds that the second factor does support the imposition of a stay pending resolution of Defendants' four previously filed motions. Importantly, the four outstanding motions all address threshold questions of law, including jurisdictional challenges. *See Burkitt v. Pomeroy*, No. 15-cv-02386-MSK-KLM, 2016 WL 696107, at *1 (D. Colo. Feb. 22, 2016) ("Questions of jurisdiction and immunity should be resolved at the earliest stages of litigation, so as to conserve the time and resources of the Court and the parties."); *Sallie v. Spanish Basketball Fed'n*, No. 12-cv-01095-REB-KMT, 2013 WL 5253028, at *2 (D. Colo. Sept. 17, 2013) ("Courts have recognized that a stay is warranted while the issue of jurisdiction is being resolved."); *see also Morrill v. Stefani*, No. 17-cv-00123-WJM-KMT, 2017 WL 1134767, at *2 (D. Colo. Mar. 13, 2017) (finding the plaintiff's interest in proceeding

expeditiously with the case to be overcome by the potential burden to the defendants "if they were forced to proceed with discovery only to have the case dismissed for lack of jurisdiction"). For instance, Defendant Gen Ag's pending motion to dismiss implicates this court's subject matter jurisdiction.[6] *See Wyers Prods. Grp. v. Cequent Performance Prods., Inc.*, No. 12-cv-02640-REB-KMT, 2013 WL 2466917, at *2-3 (D. Colo. June 7, 2013) (finding that the plaintiff's interest in proceeding expeditiously with the case was "overcome by the burden [the defendant] might face if it were forced to proceed with discovery," where the motion to dismiss "lodged colorable arguments" that the court lacked subject matter jurisdiction over the claims). The two other pending motions to dismiss, respectively filed by Defendants Tagami and Sonoma, are based, in part, on a purported lack of personal jurisdiction. *See String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 02-cv-01934-LTB-PAB, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006) ("[S]ubjecting a party to discovery when a motion to dismiss for lack of personal jurisdiction is pending may subject him to undue burden or expense, particularly if the motion to dismiss is later granted."); *Aurora Bank FSB v. Network Mortg. Servs., Inc.*, No. 13-cv-00047-PAB-KLM, 2013 WL 3146972, at *2 (D. Colo. June 19, 2013) (finding the second factor to weigh in favor of a discovery stay, where the case was "in the very early stages," and the pending motion to dismiss alleged a lack of personal jurisdiction over the defendant). Further, in the motion to compel mediation, Defendant Gen Ag sets forth what appears to be a

---

[6] Plaintiff argues that Defendant Gen Ag's motion to dismiss based on a lack of complete diversity is moot, given that SXIP is no longer a party in this case. (Resp. to Gen Ag Mot. 2.) Defendant Gen Ag, for its part, insists that the motion to dismiss remains viable, because complete diversity was lacking, as of the filing of the operative complaint. (Reply 2.) The court declines to address the specific merits of the motion to dismiss at this stage in the proceedings. *See Church Mut. Ins. Co. v. Coutu*, No. 17-cv-00209-RM-NYW, 2017 WL 3283090, at *3 (D. Colo. Aug. 2, 2017) (refusing to consider the merits of a pending motion to dismiss in ruling on a motion to stay).

well-supported argument, that alternate dispute resolution must be compelled in this action. *See Khoja v. DPD Sub, Inc.*, No. 15-cv-00258-WYD-KMT, 2015 WL 3862536, at *2 (D. Colo. June 22, 2015) (finding the second factor to weigh in favor of stay pending arbitration, where the defendant presented a "facially compelling" argument that the plaintiff's claims were subject to an enforceable arbitration agreement, because requiring the parties to submit to full discovery would subject them to "the very complexities, inconveniences and expenses of litigation that they determined to avoid"). Thus, given the nature of the four pending motions, requiring the parties to submit to full discovery at this time would potentially subject Defendants to undue burden and expense, especially if this matter is, in fact, ultimately transferred to another forum with incongruent discovery obligations. *See PopSockets LLC v. Online King LLC*, No. 19-cv-01277-CMA-NYW, 2019 WL 5101399, at *3 (D. Colo. Oct. 11, 2019) ("[T]his court agrees with Defendant that [its] burden could become prejudicial in the event this matter is transferred to another district, thereby increasing the possibility of inconsistent discovery rulings and court hearings.").

### *Remaining Factors*

Looking to the remaining *String Cheese Incident* factors, the third "court convenience" factor weighs in favor of stay. Indeed, judicial economy and resources would plainly be wasted if the court allowed discovery to proceed, only to later determine that Plaintiff's claims must be dismissed, submitted for alternate dispute resolution, or otherwise transferred to another forum. *See Skyline Potato Co. v. Rogers Bros. Farms, Inc.*, No. 10-cv-02353-WJM-KLM, 2011 WL 587962, at *2 (D. Colo. Feb. 10, 2011) ("[T]he Court notes that neither its nor the parties' time is well-served by being involved in the 'struggle of the substance of suit' when potentially

dispositive issues are adjudicated at the outset of a case."); *see also United States ex rel. El Paso Glass Co., Inc. v. David Boland, Inc.*, No. 17-cv-02072-CMA-STV, 2018 WL 1566834, at *3 (D. Colo. Mar. 30, 2018) (finding the "judicial economy" factor to weigh in favor of a stay pending the completion of mediation, where mediation would potentially "resolve all or part of the dispute, making further proceedings limited or unnecessary")  The fourth factor also supports the imposition of a stay, given that the Scheduling Order identifies at least eight anticipated third-party deponents.  *See Hay v. Family Tree, Inc.*, No. 16-cv-03143-CMA-KLM, 2017 WL 2459777, at *2 (D. Colo. June 6, 2017) (finding the fourth factor to weigh in favor of a stay, where discovery was likely to "involve significant efforts concerning others who are not parties to th[e] lawsuit").  As to the fifth factor, the general public's primary interest in this case is an efficient and just resolution.  Avoiding wasteful efforts by the court and the litigants serves that purpose.

On this record, then, having weighed the appropriate factors, the court finds that a stay of discovery is appropriate in this case.

Accordingly, it is

**ORDERED** that "General Agriculture, Inc.'s Motion to Stay Discovery until Recommendations on Dispositive Motions" (Doc. No. 80) is **GRANTED**.  It is further

**ORDERED** that "Defendant Phil Tagami's Motion for Temporary Stay Pending Resolution of Tagami's Motion to Dismiss Pursuant to 12(b)(2) and 12(b)(6)" (Doc. No. 90) is **GRANTED**.  Discovery in this matter is **STAYED** as to all Defendants, pending rulings on the four outstanding motions (Doc. Nos. 43, 47-49).  The parties shall file a joint status report within ten days of a final ruling on the four outstanding motions, if any portion of the case remains, to

advise whether the Scheduling Order should be amended.

This 8th day of July, 2020.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge