IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00052-CMA-KMT

WESTERN ACCEPTANCE, LLC

    Plaintiff,

v.

GENERAL AGRICULTURE INC. F/K/A
GENERAL AGRICULTURE LLC,
SONOMA STAINLESS, INC., STIG
WESTLING; CALLAGHAN BECKER;
PHIL TAGAMI; CALIFORNIA CAPITAL
& INVESTMENT GROUP, INC.

    Defendants.

---

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

---

Plaintiff Western Acceptance, LLC files this Second Amended Complaint[1] against Defendants General Agriculture Inc. f/k/a General Agriculture LLC; Sonoma Stainless, Inc.; Stig Westling; Callaghan Becker; Phil Tagami; and California Capital & Investment Group, Inc.; and respectfully shows as follows:

---

[1] Three Defendants have filed Rule 12(b)(6) motions to dismiss. In the respective Responses, Plaintiff noted that should the Court deem inadequate facts were in the pleading to sufficiently state any claim, it would request leave to amend its pleadings to cure any purported defect. Plaintiff contends its First Amended Complaint adequately meets the requirement of Rule 8 and this Second Amended Complaint merely adds another party to the litigation. Should the Court grant any of the Rule 12(b)(6) motions, Plaintiff reiterates its request to plead additional facts as required.

# I.
# PARTIES

1. Plaintiff WESTERN ACCEPTANCE, LLC is a Colorado Limited Liability Company.

2. Defendant GENERAL AGRICULTURE INC. F/K/A GENERAL AGRICULTURE LLC is a California corporation with its principal place of business in Oakland, California. It has made an appearance in this case through counsel.

3. Defendant SONOMA STAINLESS, INC. is a California corporation. It has made an appearance in this case through counsel.

4. Defendant STIG WESTLING is an individual residing in California and may be served with process at 1005 Northgate Drive, #310; San Rafael, California 94903.

5. Defendant CALLAGHAN BECKER is an individual residing in California. He has made an appearance in this case though counsel.

6. Defendant PHIL TAGAMI is an individual residing in California He has made an appearance in this case through counsel.

7. Defendant CALIFORNIA CAPITAL & INVESTMENT GROUP, INC. is a California corporation that can be served through it agent for service Skylar Sanders; 300 Frank H. Ogawa Plaza, Suite 340; Oakland, California 94612.

# II.
# JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) as there is complete diversity of citizenship among the parties to this suit and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

9. The Court has personal jurisdiction over Defendants because Defendants conduct business in Colorado, entered into relationships with Plaintiff in Colorado, and committed actions

in Colorado that give rise to this cause of action. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice. Damages sought are within the jurisdictional limits of this Court.

## III.
## FACTUAL BACKGROUND

10. Plaintiff contracted with SXIP, LLC for the design and manufacture of equipment to be utilized in Plaintiff's business. The equipment consisted of many parts but, in short, all the components together formed what can be called a Distillate Unit. Plaintiff paid SXIP approximately $2 million for the Distillate Unit.

11. Defendant General Agriculture Inc. ("GenAg") is a California company. At all times herein, GenAg operated through its executives, officers, and agents Defendants Stig Westling, Phil Tagami and Callaghan Becker, (hereinafter "GenAg Agents"), along with non-parties Tiffany Weaver, Taher Afghani, Christine Miller Martin Kaufman, Peter Huson, Brady Glaughier, and Brian Mehrhoff. Upon information and belief, Defendant Tagami was a consultant for GenAg or was employed by GenAg in some form or fashion. Upon information and belief, Defendant Tagami also owns or controls the building in California that is leased by GenAg.

12. According to Defendant Tagami, he was an employee of Defendant California Capital & Investment Group , LLC (hereinafter "CCIG"). Defendant GenAg retained CCIG and Tagami as consultants to assist in the hemp-extraction business. In addition to acting as an agent for GenAg, Defendant Tagami also acted as an agent for CCIG at all times referenced herein. Tagami personally participated in the tortious act described below and his actions benefitted not only himself, but also CCIG and GenAg.

13. At some point in time during the manufacturing of the Distillate Unit, most likely in the Spring of 2019, SXIP was acquired by GenAg or one of its affiliates. Plaintiff was told of the acquisition directly by Defendant Becker, the head of GenAg and Afghani, the head of SXIP. Following or during said acquisition, Plaintiff began dealing directly with GenAg Agents for the manufacture of the Distillate Unit. Mr. Afghani became an agent for GenAg during the manufacturing process around the time of the acquisition. Mr. Afghani and Ms. Miller visited the Colorado Springs facility of the Plaintiff.

14. Plaintiff's facility in Colorado Springs was visited personally by GenAg Agents and many of the GenAg Agents lived in Colorado Springs for a time to work with Plaintiff at its facility. The GenAg agents who personally visited the Colorado facility of Plaintiff were Callaghan Becker, Phil Tagami, Stig Westling, Brian Mehrhoff, Peter Huson, Tiffany Weaver, Taher Afghani, Martin Kaufman, and Gene Walt. Each of these persons visited the Colorado Springs facility for the benefit of GenAg, and for the purpose of soliciting Plaintiff's business and performing the contractual duties of GenAg. In addition to benefiting GenAg, Tagami also benefited himself and CCIG.

15. During the visits to Plaintiff's Colorado Springs facility, all Defendants created a ruse that they wanted to partner with Plaintiff, help Plaintiff grow its business, and utilize the concept Plaintiff created to further business ventures for all involved. This ruse was nothing more than pure trickery.

16. In fact, Defendant Tagami, who visited Plaintiff's facility multiple times under the guise of being a compliance consultant for GenAg, told Plaintiff that Plaintiff was out of compliance and that Plaintiff should move its entire operation to a facility that he designated. This was the Defendants' first attempt to take Plaintiff's equipment, which ultimately occurred.

17. In addition to personally visiting Plaintiff's facility, GenAg took monies directly from Plaintiff for the manufacture of the Distillate Unit. GenAg, during its many visits to Colorado Springs, told Plaintiff additional work would need to be done on the Distillate Unit for which Plaintiff paid GenAg directly.

18. GenAg learned while visiting Plaintiff's facility that Heaters were necessary for the processing of distillate. Thereafter, sometime following the many visits to Colorado, persons from GenAg showed up at Plaintiff's Colorado Springs facility and took heaters and other component parts (hereinafter "Heaters") necessary for the distillate process.

19. In addition to GenAg, CCIG and each of their agents, Plaintiff was damaged by the actions of Defendant Sonoma Stainless. Upon information and belief, SXIP and/or GenAg subcontracted to Sonoma Stainless various portions of the manufacturing process for the Distillate Unit. Sonoma Stainless was concerned about getting paid by SXIP and GenAg, so Sonoma Stainless orally contracted with Plaintiff for the providing of monies and direction directly from Plaintiff with regard to the manufacture of the Distillate Unit.

20. Sonoma Stainless chose to deal directly with Plaintiff on part of the payment for its work rather than rely on the companies based in California. Sonoma Stainless requested to enter into this agreement directly with Plaintiff knowing it was a Colorado company and knowing that the Distillate Unit was to be shipped to Colorado upon completion

21. During the manufacturing process, Plaintiff visited Sonoma Stainless' facility in California to check on progress of the Distillate Unit. During this meeting, Weaver was in attendance. Weaver told Plaintiff that after completion of the Distillate Unit, GenAg wanted to take possession of it. Plaintiff vehemently refused and told Weaver and Vincent Frere, owner of

Sonoma Stainless, that Plaintiff wanted the Distillate Unit sent to Colorado Springs following completion.

22. Rather than abide by Plaintiff's direction, Sonoma Steel and its agents allowed the Distillate Unit to be taken by Defendants.

23. Despite repeated demands, to date, none of the Defendants are willing to tell Plaintiff where the Distillate Unit and Heaters are today. Plaintiff was told by multiple Defendants that the property was taken to Ukiah California. However, as of present time, Defendant refuse to tell Plaintiff where the property is and refuses to return the property to Plaintiff.

## IV.
## CAUSES OF ACTION

### Breach of Contract by Sonoma Stainless

24. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

25. Plaintiff and Sonoma Stainless entered into an oral contract for the design and manufacture of Distillate Unit to be used in Plaintiff's business. Sonoma Stainless accepted monies directly from Plaintiff for said Contract.

26. Plaintiff performed all conditions precedent required by the Contract.

27. To date, Sonoma Stainless has failed and continues to fail to deliver to Plaintiff the equipment for which Plaintiff paid.

28. Sonoma Stainless, and its agent Vince Frere met with Plaintiff at Plaintiff's Colorado Springs facility. Sonoma Stainless and its Agents understood that the Distillate Unit was to be delivered to Plaintiff at the Colorado Springs facility. Despite this understanding, the Distillate Unit was not delivered to Plaintiff.

29. This breach of the contract by Sonoma Stainless has caused Plaintiff damages including out of pocket expenses and loss of revenue, and attorney's fees.

## Breach of Contract by GenAg

30. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

31. Plaintiff and GenAg entered into an oral contract, in addition to the contract with SXIP which GenAg now owns, for the design and manufacture of Distillate Unit to be used in Plaintiff's business. GenAg accepted monies directly from Plaintiff for said Contract.

32. Plaintiff performed all conditions precedent required by the Contract.

33. To date, GenAg has failed and continues to fail to deliver to Plaintiff the equipment for which Plaintiff paid.

34. This breach of the contract by GenAg has caused Plaintiff damages including out of pocket expenses and loss of revenue, and attorney's fees.

## Negligence of Sonoma Stainless

35. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

36. Sonoma Stainless had a duty to use reasonable care in the performance of its services to and for Plaintiff and to act in such a manner as to protect Plaintiff's property from harm.

37. Sonoma Stainless received direct money from Plaintiff and conferred with Plaintiff multiple times regarding the services/products that Sonoma was providing to Plaintiff.

38. Sonoma Stainless negligently performed services in regards to the property allowing unauthorized individuals to enter and to exit the Property and to illegally and/or without authorization to remove property belonging to Plaintiff.

39. Sonoma Stainless breached their duty of care and failed to exercise reasonable or ordinary care with regards to the Property of Plaintiff.

40. These acts and/or omissions on the part of the Sonoma Stainless were a contributing and substantial factor in causing the damage sustained by Plaintiff.

41. Plaintiff entrusted its property to Sonoma Stainless. Despite being told to not release the property to the SXIP Agents and GenAg Agents, Sonoma Stainless allowed those parties to take Plaintiff's property.

42. These acts and/or omissions on the part of Sonoma Stainless were the legal and proximate cause of damages to Plaintiff in the complete and total destruction/disappearance of the property.

### Civil Theft Against GENAG, GENAG AGENTS and CCIG

43. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

44. Under applicable law, all property obtained by theft, robbery, or burglary shall be restored to the owner, and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his right to such property.

45. Plaintiff bring this action, as owner of the property which was stolen, against GenAg, the GenAg Agents AND CCIG, who are responsible for stealing the property and whom are believed to be in actual and/or constructive possession of the property.

46. Plaintiff seeks its actual damages, attorney fees, plus three times said damages under applicable law.

## Conspiracy Against GENAG, GENAG AGENTS and CCIG

47. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

48. Upon information and belief, all Defendants (other than Sonoma) with the object of harming Plaintiff did in fact harm Plaintiff and take Plaintiff's property as described above.

49. GenAg, the GenAg Agents, and CCIG perpetuated a scheme to take Plaintiff's property and to take Plaintiff's property and preclude Plaintiff from its property and money utilized to pay for said property.

50. GenAg, the GenAg Agents, and CCIG each separately and in concert with one another agreed that they would act in concert to take Plaintiff's property and preclude Plaintiff from the use and enjoyment of its Distillate Unit and Heaters.

51. Specifically, and without limitation, GenAg and CCIG through their co-ownership, co-Agents/employees, and co-actions, via meetings with Plaintiff and conversations with Plaintiff were conspiring to learn of Plaintiff's business, its method for operating, its use and ownership of equipment, and its trade secrets so that GenAg, the GenAg Agents, and CCIG could eventually take Plaintiff's Heaters and Distillate Unit and Plaintiff's money for their own use to Plaintiff's detriment.

## Conversion

52. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

53. Plaintiff has a superior right of possession to the property referred to above.

54. Defendants GenAg, GenAg Agents and CCIG each negligently or intentionally exercised unauthorized dominion over said Property.

55. Defendants GenAg, GenAg Agents and CCIG are liable for all damages caused to Plaintiff resulting from the conversion in an amount to be determined at trial.

### Unjust Enrichment By All Defendants

56. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

57. Defendant Sonoma Stainless has received a large sum of money, directly and indirectly from Plaintiff, for the manufacture of a Distillate Unit. Said Distillate Unit was stolen from Plaintiff largely with the help of Sonoma Stainless. Thus, it is unjust for Sonoma Stainless to retain to the large sums of money.

58. Defendants, GenAg GenAg Agents, CCIG have received a large sum of money, directly and indirectly from Plaintiff, for the manufacture of a Distillate Unit. Said Distillate Unit was stolen from Plaintiff largely with the help of Sonoma Stainless. Thus, it is unjust for GenAg and CCIG to retain to the large sums of money. Further, upon information and belief, in addition to having the monies, Defendants have the Distillate Unit and Heaters and it is unjust for GenAg and CCIG to retain the monies and property to Plaintiff's detriment.

59. Defendants are liable for all damages caused to Plaintiff resulting from the conversion in an amount to be determined at trial.

### V.
### JURY DEMAND

60. Plaintiff respectfully demands a jury.

### VI.
### PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff Western Acceptance LLC hereby respectfully requests that the Court enter judgment in Plaintiff's favor on all of its claims for relief, and award Plaintiff compensatory damages in its favor in an amount to be proven at trial,

including pre- and post-judgment interest, costs, and reasonable attorney's fees; and grant Plaintiff such other and further relief as the Court deems just and proper.

Dated: <u>January 8, 2021</u>

Respectfully submitted,

<u>/ s/ T. Micah Dortch</u>
T. Micah Dortch
POTTS LAW FIRM, LLP
2911 Turtle Creek Blvd., Suite 1000
Dallas, Texas 75219
Telephone: (214) 396-9427
Facsimile: (469) 217-8296
Email: mdortch@potts-law.com

Christopher D. Lindstrom, #51052
POTTS LAW FIRM, LLP
3737 Buffalo Speedway, Suite 1900
Houston, Texas 77098
Telephone: (713) 963-8881
Facsimile: (713) 583-5388
E-mail: clindstrom@potts-law.com
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2021, I served all counsel of record with the foregoing in accordance with the Federal Rules of Civil Procedure via the Court's ECF system.

/ *s/ T. Micah Dortch*
T. Micah Dortch