**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 20-cv-00052-CMA-SKC

WESTERN ACCEPTANCE, LLC,

      Plaintiff,

v.

GENERAL AGRICULTURE, INC., *f/k/a* General Agriculture, LLC,
STIG WESTLING,
CALLAGHAN BECKER,
PHIL TAGAMI, and
CALIFORNIA CAPITAL & INVESTMENT GROUP, INC.,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS CALIFORNIA
CAPITAL & INVESTMENT GROUP, INC.'S AND STIG WESTLING'S
MOTIONS TO DISMISS**

---

This matter is before the Court on two motions: (1) Defendant California Capital & Investment Group Inc.'s FRCP 12(b) Motion to Dismiss Plaintiff's Second Amended Complaint for Lack of Personal Jurisdiction and Failure to State a Claim ("CCIG's Motion," Doc. # 130); and (2) Defendant Stig Westling's Motion to Dismiss Plaintiff's Second Amended Complaint ("Westling's Motion," Doc. # 172). For the following reasons, the Court grants in part and denies in part CCIG's Motion, and the Court grants Defendant Westling's Motion.

## I.      <u>BACKGROUND</u>

**A.      ALLEGATIONS IN THE SECOND AMENDED COMPLAINT**

This is a business dispute. Plaintiff Western Acceptance, LLC ("Western Acceptance" or "Plaintiff") is a Colorado limited liability company headquartered in Colorado Springs, Colorado. (Doc. # 112.) Western Acceptance sued three California corporations: Defendants General Agriculture, Inc. ("GenAg"), Sonoma Stainless, Inc. ("Sonoma"), and California Capital & Investment Group, Inc. ("CCIG"). Western Acceptance also sued three California citizens affiliated with those entities: Defendants Stig Westling, Callaghan Becker, and Phil Tagami (the "Individual Defendants"). The claims against Sonoma were previously dismissed by the Court. (Doc. # 154.)

According to the Second Amended Complaint, Plaintiff entered into a contract with former Defendant SXIP, LLC[1] ("SXIP") for approximately $2 million to design and manufacture business equipment referred to as a "Distillate Unit." (Doc. # 112 at ¶ 10.) "At some point in time during the manufacturing of the Distillate Unit," Plaintiff alleges that SXIP was acquired by GenAg. (*Id.* at ¶ 13.)

As a result, Plaintiff avers that it "entered into an oral contract" with GenAg and "began dealing directly" with GenAg as to "the design and manufacture of the Distillate Unit." (*Id.* at ¶¶ 13, 17, 31.) In exchange, GenAg "took monies directly from" Western Acceptance. (*Id.* at ¶¶ 13, 17, 31.) According to Western Acceptance, the oral

---

[1] Although SXIP was initially named as a Defendant in this case, all claims against it have been dismissed. (Doc. # 83.)

agreement was "in addition to the contract with SXIP which GenAg now own[ed]," by virtue of its acquisition of SXIP. (*Id.* at ¶ 31.)

Western Acceptance avers that, around the same time, GenAg's alleged "agents" began "personally visiting" Plaintiff's facility in Colorado Springs, on GenAg's behalf, to "create[] a ruse that they wanted to partner with Plaintiff, [and] help Plaintiff grow its business," when in reality, they "were conspiring to learn of Plaintiff's business" for purposes of "eventually tak[ing]" Plaintiff's property and money. (*Id.* at ¶¶ 11–16, 51.) These alleged agents include: (1) GenAg's Chief Executive Officer, Defendant Becker; (2) GenAg's retained consultant, Defendant Tagami, who was allegedly acting on behalf of himself as well as the agent for CCIG; and (3) Defendant Westling. (*Id.*) The Second Amended Complaint does not specify the capacity in which Mr. Westling worked for GenAg or in what capacity Mr. Westling served as an alleged agent for GenAg.

The Second Amended Complaint identifies Mr. Tagami "upon information and belief" as a consultant for GenAg or "employed by GenAg in some form or fashion." (*Id.* at ¶ 11.) The Second Amended Complaint also identifies Mr. Tagami as an employee of CCIG. (*Id.* at ¶ 12.) Plaintiff alleges that GenAg retained CCIG and Mr. Tagami to serve as "consultants to assist in the hemp-extraction business." (*Id.*) Western Acceptance states that Mr. Tagami was an "agent for CCIG at all times," and he benefited CCIG, GenAg, and himself through his tortious acts. (*Id.*)

Western Acceptance avers that Mr. Tagami visited its Colorado Springs facility on multiple occasions as a consultant on behalf of GenAg. (*Id.* at ¶ 16.) During one such visit, Mr. Tagami "attempt[ed] to take" its "equipment," by disingenuously advising

Western Acceptance to "move its entire operation to another facility that [Mr. Tagami] designated." (*Id.* at ¶ 16.) Plaintiff further alleges that, after "GenAg learned while visiting Plaintiff's facility that Heaters were necessary for the processing of distillate," unspecified "persons from GenAg showed up at" Plaintiff's facility and "took" the Heaters. (*Id.* at ¶ 18.) Plaintiff complains that "Defendants" have thus far refused to divulge the location of the Heaters. (*Id.* at ¶ 23.)

According to the Second Amended Complaint, one of GenAg's agents informed Western Acceptance "that after completion of the Distillate Unit, GenAg wanted to take possession of it." (*Id.* at ¶ 21.) Western Acceptance claims that it "vehemently refused" to allow GenAg to do so. (*Id.*) At the time, Western Acceptance reportedly made clear to GenAg that it "wanted the Distillate Unit sent to Colorado Springs following completion." (*Id.*) Plaintiff alleges that the Distillate Unit was taken by Defendants, and Defendants refused to provide the location of the Distillate Unit. (*Id.* at ¶ 22, 23.)

## B.    RELEVANT JURISDICTIONAL FACTS

The following jurisdictional facts regarding CCIG are taken from the Complaint, as well as the declarations and exhibits attached to the parties' briefing.

CCIG is a California corporation with a single office located in Oakland, California. (Doc. # 130-1 ¶ 3.) Mr. Tagami is CCIG's Chief Executive Officer and President of the Board of Directors. (*Id.*)

On April 2, 2019, CCIG entered into a written Consulting Agreement with GenAg. (*Id.* at ¶ 5; Doc. # 130-2.) The Consulting Agreement identifies CCIG as the "Consultant" and Mr. Tagami as the "Consultant Contact." (Doc. # 130-2 at 2.) The Consulting

Agreement states that CCIG will assist GenAg with "[g]eneral business consulting to help advance [Client's] existing business operations." (*Id.*)

In connection with the consulting agreement, Mr. Tagami—in his capacity as an employee of CCIG—traveled with a CCIG subcontracted architect to Colorado to perform a two-day inspection of Plaintiff's facility in Colorado in May 2019. (Doc. # 130-1 at ¶¶ 7–8.) During the two-day inspection, Mr. Tagami spoke with one of Plaintiff's representatives, T. Alan Boyd, and informed him that the Colorado Springs facility did not comply with "government codes and he recommended that all of Western Acceptance's equipment be moved out of the Colorado Springs facility to a location in Oakland, California or elsewhere that [Mr. Tagami] controlled that would be code compliant." (Doc. # 134-3 at ¶ 17.)

Mr. Boyd informed Mr. Tagami "that under no circumstances was there going to be any removal of existing equipment from the Colorado Springs location and that if any business was to be done in the future, it must be done in Colorado Springs, at Western Acceptance's facility." (*Id.* at ¶ 18.) Mr. Tagami, in response, told Mr. Boyd that "GenAg and Western Acceptance would work together to develop the hemp extraction business in the Colorado Springs facility." (*Id.* at ¶ 19.)

On or about June 19, 2019, "CCIG's subcontracted architect—with input from CCIG—produced a written compliance report, which utilized the findings from the May 2019 site inspection." (Doc. # 130-1 at ¶ 11.) The written report concluded that Plaintiff's Colorado Springs facility "was not in compliance with local building and zoning use

codes, and, therefore, would not qualify for the permits necessary for GenAg's intended use without substantial improvements." (*Id.*)

After the site inspection, CCIG also assisted GenAg with preparing a written proposal for Western Acceptance. (*Id.* at ¶ 12.) The proposal outlines "the future operations between General Ag and Western Acceptance" and the "plan for achieving compliance" at the Colorado Springs facility. (Doc. # 130-5.)

Shortly after, CCIG notified GenAg of its concerns related to proceeding with the Colorado Springs facility. (Doc. # 130-1 at ¶ 15.) CCIG's consulting agreement with GenAg terminated on October 7, 2019. (*Id.* at ¶ 7.)

## C.    PROCEDURAL HISTORY

Western Acceptance commenced this lawsuit on January 7, 2020. (Doc. # 1.) On January 8, 2021, Western Acceptance filed a Second Amended Complaint, asserting the following claims: (1) breach of contract by Sonoma; (2) breach of contract by GenAg; (3) negligence by Sonoma; (4) civil theft by GenAg, CCIG, and the Individual Defendants; (5) conspiracy by GenAg, CCIG, and the Individual Defendants; (6) conversion by GenAg, CCIG, and the Individual Defendants; and (7) unjust enrichment by all Defendants. (Doc. # 112 at ¶¶ 24–59.) As relief, Plaintiff requests compensatory damages, interest, costs, and attorneys' fees. (*Id.* at 10–11.)

On January 22, 2021, Defendants GenAg, Mr. Becker, Sonoma, and Mr. Tagami filed motions to dismiss the claims against them. (Doc. ## 115, 118–119.) On September 17, 2021, the Court dismissed the claims against Sonoma. (Doc. # 154.) Additionally, the Court dismissed the civil conspiracy claims against GenAg, Mr. Becker,

and Mr. Tagami. (*Id.*) The Court denied Mr. Tagami's motion to dismiss for lack of personal jurisdiction. (*Id.*)

On March 1, 2021, CCIG filed a motion to dismiss the claims against it under Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6). (Doc. # 130.) On December 2, 2021, Defendant Westling filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). This matter is now ripe for review.

II.    **LEGAL STANDARD**

A.    **RULE 12(b)(2) LEGAL STANDARD**

To establish personal jurisdiction over a nonresident defendant, a plaintiff must show both that jurisdiction is proper under the forum state's long-arm statute and that the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution. *See Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1357 (10th Cir. 1990). Colorado's long-arm statute permits the Court to exercise personal jurisdiction to the full extent of the Due Process Clause, and therefore, the analysis collapses into a single due process inquiry. *See* Colo. Rev. Stat. §§ 13-1-124(1)(a)–(b); *Dart Int'l, Inc. v. Interactive Target Sys., Inc.*, 877 F. Supp. 541, 543 (D. Colo. 1995) (citing *Safari Outfitters, Inc. v. Superior Court*, 448 P.2d 783 (1968)); *SGI Air Holdings II LLC. v. Novartis Int'l, AG*, 192 F. Supp. 2d 1195, 1197–98 (D. Colo. 2002)**.**

"The Due Process Clause protects a [defendant's] liberty interest in not being subject to the binding judgments of a forum with which [it] has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

471–72 (1985) (quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 319 (1945)). The cornerstone of the personal jurisdiction inquiry is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996) (quoting *WorldWide Volkswagen v. Woodson*, 444 U.S. 286, 295 (1980)). To comport with due process limitations, a court may exercise personal jurisdiction only over defendants that have "certain minimum contacts [with the jurisdiction] . . . ." *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

When there are multiple defendants, as is the case here, "minimum contacts must be found as to each defendant over whom the court exercises jurisdiction." *Home-Stake Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1020 (10th Cir. 1990). The minimum contacts standard may be satisfied in either of two ways—general or specific jurisdiction. *See Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996). A court's duty is the same in either case: it must guarantee that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *World–Wide Volkswagen*, 444 U.S. at 292 (1980) (quoting *Int'l Shoe*, 326 U.S. at 316) (internal quotation omitted).

A court may assert general jurisdiction over a foreign corporation to hear any and all claims against it when its affiliations with the state are so "continuous and systematic" such that it is essentially at home in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (quoting *Goodyear Dunlop Tires Ops., S.A. v.*

*Brown*, 564 U.S. 915, 919 (2011)). "For an individual, the paradigm forum for the exercise of general juridiction is the individual's domicile; for a corporation, it is an equivalent place." *Daimler*, 571 U.S. at 137; *see also Goodyear*, 564 U.S. at 919. "The 'paradigm' forum[] in which a corporate defendant is 'at home' . . . [is] the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrell*, 137 S. Ct. 1549, 1558 (2017) (internal citations omitted).

Specific jurisdiction, on the other hand, depends on an "affiliation between the forum and the underlying controversy." *Id*. For a court to assert specific jurisdiction, the out-of-state defendant must have (1) purposefully directed its activities at residents of the forum, and (2) the litigation must result from alleged injuries that "arise out of or relate to" those activities. *Burger King*, 471 U.S. at 472. The purposeful direction requirement "ensures that defendants will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, . . . or of the unilateral activity of another party or a third person." *Id*. at 475. To determine whether a defendant in a tort-based lawsuit "purposefully directed its activities at the forum state," the Court looks for three elements: (1) an intentional act that was (2) aimed expressly at the forum state with (3) the knowledge that the brunt of the injury would be felt in the forum state. *Calder v. Jones*, 465 U.S. 783, 789–90 (1984).

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a motion to dismiss may be granted if the court lacks personal jurisdiction over the defendant. Although the plaintiff bears the burden of establishing personal jurisdiction over the defendant, at the preliminary stage of the litigation, this burden is "light." *Intercon, Inc. v. Bell Atl. Internet*

*Sol., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (quoting *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)). "The plaintiff may meet this burden 'by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant.'" *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007) (quoting *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007)). Where there has been no evidentiary hearing and the motion to dismiss for lack of personal jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need "only make a prima facie showing of personal jurisdiction." *Id*.

The allegations in the complaint must be taken as true only so long as they remain undisputed by the defendant's affidavits. *Id*. Furthermore, only the well-pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true. *Wenz*, 55 F.3d at 1505. If the jurisdictional allegations are challenged by an appropriate pleading, the plaintiff has "the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts." *Pytlik v. Prof'l Ltd*., 887 F.2d 1371, 1376 (10th Cir. 1989).

## B.    RULE 12(b)(6) LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is

legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of [a] plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, the Court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and brackets omitted).

## III.   <u>ANALYSIS</u>

## A.   CCIG's RULE 12(b)(2) MOTION TO DISMISS

CCIG avers that the Court lacks personal jurisdiction over it because Plaintiff cannot establish general or specific personal jurisdiction in Colorado. Plaintiff does not allege that the Court has general jurisdiction over CCIG. Thus, the Court's inquiry is limited to whether it can exercise specific jurisdiction over CCIG.

1.     Objections Based on Allegations in Complaint and Affidavits

As an initial matter, CCIG asserts that Plaintiff has failed to meet its burden to make a prima facie showing of facts sufficient to justify personal jurisdiction. (Doc. # 130 at 5; Doc. # 139 at 3–4.) Without analysis, CCIG argues that "Plaintiff's conclusory and contradictory allegations will not suffice to refute CCIG's instant motion to dismiss and jurisdictional facts submitted in support." (Doc. # 139 at 5.) The Court disagrees.

Although Plaintiff has the burden of proving jurisdiction exists, the burden is "light" in the preliminary stages. *Wenz*, 55 F.3d at 1505. In this case, the parties submitted conflicting affidavits on the issue of jurisdiction. (*Compare* Doc. # 130-1 with Docs. ## 134-1, 130-2, and 130-3). In the face of conflicting affidavits, the Court must resolve all factual disputes in Plaintiff's favor. *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984). As set forth below, the Court finds that Plaintiff has met its light burden at this stage of the proceedings.

2.     No Imputed Contacts Rule

CCIG also argues that it cannot be subject to personal jurisdiction in this case, as a matter of law, because at all times relevant, it was acting as an agent for GenAg. (Doc. # 130 at 5–6.) CCIG contends that any alleged contacts with Colorado are "ultimately imputed only to GenAg." (*Id.* at 6.) CCIG also argues that individuals cannot be subject to jurisdiction based on the acts of a principal or corporate entity. (*Id.* at 5–6.)

CCIG's argument conflates the "no imputed contacts rule" with the "fiduciary shield doctrine," which gives greater protection to *employees* of corporations. *See Newsome v. Gallacher*, 722 F.3d 1257, 1275 (10th Cir. 2013) (discussing the

"significant confusion" over these two doctrines). The "no imputed contacts" rule prevents courts from imputing a corporation's contacts with the forum state onto that corporation's employees. *Id.* Under the fiduciary shield doctrine, even if a particular employee has "substantial contacts" with the forum state, "those contacts will not count against the employee in the personal jurisdiction analysis so long as the employee acted solely on the corporation's behalf." *Id.* Critically, however, while "the no-imputed contacts rule is integral to the minimum contacts due process test," the fiduciary shield doctrine "only exists as a matter of state law." *Id.* Thus, the fiduciary shield doctrine is irrelevant to the present jurisdictional analysis. *Serv. First Permits, LLC v. Lightmaker Vancouver (Internet) Inc.*, No. 18-CV-02089-CMA-NYW, 2019 WL 109335, at *5 (D. Colo. Jan. 4, 2019), *report and recommendation adopted,* No. 18-CV-02089-CMA-NYW, 2019 WL 1081002 (D. Colo. Jan. 25, 2019) (holding that a foreign defendant's "status as a corporate officer or employee" did not "shield his contacts from the court's exercise of personal jurisdiction").

Regardless, the Court agrees that, to exercise jurisdiction over a defendant, due process requires that a party have its own minimum contacts with the forum state. *See, e.g.*, *Melea*, 511 F.3d at 1065. Thus, the Court examines CCIG's own contacts with Colorado to determine whether the exercise of personal jurisdiction is appropriate. The Court will not examine GenAg's contacts with Colorado to determine whether it can exercise jurisdiction over CCIG. *Burger King*, 471 U.S. at 472; *Calder*, 465 U.S. at 789–90.

3.     Whether CCIG Purposefully Directed Its Activities Toward Colorado

CCIG asserts that the Court lacks personal jurisdiction over it because it did not purposefully direct its activities toward Colorado. (Doc. # 130 at 7–10.) To establish specific jurisdiction over CCIG, Plaintiff must first show that CCIG purposefully directed its activities towards Colorado. *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1229 (10th Cir. 2020). The Tenth Circuit has recognized four frameworks under which "purposeful direction" may be demonstrated: (1) continuing relationships with forum state residents; (2) deliberate exploitation of the forum state market; (3) harmful effects in the forum state ("harmful effects"); or (4) the "stream of commerce" theory. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 909 n.21 (10th Cir. 2017) (identifying the four frameworks). Plaintiff seeks to establish specific personal jurisdiction under the "harmful effects" framework. (Doc. # 134 at 6–11.)

a.  *Purposeful Direction Requirement*

To establish that CCIG purposefully directed its activities at Colorado under the harmful effects framework, Plaintiff must show "(a) an intentional action that was (b) expressly aimed at the forum state with (c) knowledge that the brunt of the injury would be felt in the forum state." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 841 (10th Cir. 2020).

i.   *"Intentional Action"*

The Second Amended Complaint alleges that CCIG committed four torts: (1) civil theft; (2) conspiracy; (3) conversion; and (4) unjust enrichment. (Doc. # 112 at ¶¶ 43–59.) The claims against CCIG are based on the allegation that Mr. Tagami, personally

and on behalf of CCIG, travelled to Colorado and tried to convince Western Acceptance to move its business operations to an out-of-state facility of Mr. Tagami's choosing, as part of a plan to take control of Western Acceptance's business and property.[2] (Doc. # 134-3 at ¶¶ 15–19; Doc. # 112 at ¶ 16.)

CCIG first argues that the Court lacks personal jurisdiction over it because the Second Amended Complaint "fails to distinguish between the 'intentional acts' of CCIG and its employee." (Doc. # 130 at 8.) However, "a corporation can only act through its agents." *Colorado Coffee Bean, LLC v. Peaberry Coffee Inc.*, 251 P.3d 9, 29 (Colo. App. 2010), *as modified on denial of reh'g* (Apr. 1, 2010); *see also Wright Med. Tech., Inc. v. Paragon 28, Inc.*, No. 18-CV-00691-PAB-STV, 2019 WL 4751807, at *5 (D. Colo. Sept. 30, 2019) (observing that "[a] corporation acts through its agents" and "the actions of corporate officers and directors are attributable to the corporate entity") (citations omitted). In this case, Mr. Tagami is CCIG's Chief Executive Officer and President of the Board of Directors. (Doc. # 130-1 at ¶ 3.) Plaintiff alleges that Mr. Tagami was acting on behalf of CCIG when he committed the torts outlined in the Second Amended Complaint. (Doc. # 112 at ¶¶ 12, 14.) Under these factual allegations, the Court may look to the actions of Mr. Tagami, on behalf of CCIG, to determine whether CCIG committed an intentional act aimed at Colorado.

---

[2] CCIG argues that the Court lacks personal jurisdiction over it because jurisdiction is based solely on Plaintiff's flawed conspiracy claim. (Doc. # 130 at 6–7.) The Court disagrees based on the four causes of action alleged against CCIG and the allegations contained in the Second Amended Complaint.

CCIG also argues that Plaintiff's Second Amended Complaint is contradictory because it alleges that Mr. Tagami is liable on behalf of CCIG and on behalf of himself individually. (Doc. 130 at 6.) However, "[u]nder Colorado law, a corporate officer or agent can be held personally liable for his individual tortious acts, even though committed on behalf of the corporation, which is also held liable." *List Interactive, Ltd. v. Knights of Columbus*, 303 F. Supp. 3d 1065, 1078 (D. Colo. 2018) (citations and internal quotations omitted). Thus, this argument fails.

Finally, CCIG avers that the allegations against it are "neither tortious nor true," and, therefore, the jurisdictional facts disprove any "intentional *tortious* action." (*Id.* at 8–9) In other words, even if CCIG committed an intentional act, it argues that the act was not tortious. (*Id.*) For purposes of establishing jurisdiction under the harmful effects framework, it remains an open question "whether a defendant's intentional [action] must be wrongful or tortious or whether innocent intentional action suffices." *Burns v. Ledru*, No. 12-cv-02646-RBJ-KLM, 2013 WL 1129425, at *5 (D. Colo. Feb. 5, 2013) (quoting *Sharpshooter Spectrum Venture, LLC v. Consentino*, No. 09-cv-00150-WDM-KLM, 2009 WL 4884281, at *6 (D. Colo. Dec. 10, 2009)).

Regardless, Plaintiff has unquestionably alleged that CCIG, through the acts of its Chief Executive Officer, intentionally acted in a wrongful manner. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1073 (10th Cir. 2008) (avoiding "th[e] thicket" of answering whether "any intentional act, wrongful or not" satisfied the first element of the harmful effects test, because the plaintiffs' complaint alleged wrongful conduct). Plaintiff's allegations, though disputed by CCIG, are supported by Plaintiff's

evidence. *See Old Republic*, 877 F.3d at 903 ("We resolve all factual disputes in favor of the plaintiff in determining whether plaintiff has made a prima facie showing [of jurisdiction]."). Accordingly, Plaintiff has adequately established that CCIG took intentional action.

    ii.    *"Expressly Aimed"*

    The second element of the harmful effects test requires that the forum state itself be the "focal point of the tort." *Dudnikov*, 514 F.3d at 1074 n.9. CCIG argues that the focal point if of its alleged actions was not Colorado, but instead, California, where "the ultimate theft and conversion" of the Distillate Unit occurred. (Doc. # 130 at 9–11.) The Court disagrees.

    While the alleged taking of the Distillate Unit occurred strictly in California, the claims against CCIG are Colorado-centric—namely that CCIG and its agent took steps in Colorado to wrongfully take Plaintiff's property. The pleadings and supporting jurisdictional evidence are sufficient to show that Mr. Tagami, on behalf of CCIG, visited the Colorado Springs facility "multiple times under the guise of being a compliance consultant for GenAg," for purposes of learning "Plaintiff's business, its method of operating, its use and ownership of equipment, and its trade secrets," to "eventually take" Plaintiff's property. (Doc. # 112 ¶¶ 16, 51.) Notably, Plaintiff alleges that on one visit to Colorado, Mr. Tagami "attempt[ed] to take" Western Acceptance's "equipment." (*Id.* at ¶ 16.) Under these circumstances, CCIG could reasonably expect to be haled into court in Colorado. *See Rain Int'l, LLC v. Cook*, No. 2:20-cv-00537-JNP-DBP, 2021 WL 1063310, at *5 (D. Utah Mar. 18, 2021) (finding that a nonresident defendant

expressly aimed her allegedly tortious conduct at Utah, where "some of the tortious conduct allegedly occurred while [the defendant] was physically present in Utah").

iii.   <u>*"Brunt of Injury"*</u>

The third element of the harmful effects test "concentrates on the consequences of the defendant's action" and where the alleged harm was actually felt by the plaintiff. *Dudnikov*, 514 F.3d at 1074–75. The *prima facie* evidence establishes that CCIG, through Mr. Tagami, knew that Western Acceptance operated in Colorado. (Doc. ## 130-1 at 10; ¶ 16–17; 130-2 ¶¶ 15–16; 134-3 at ¶¶ 12–13, 17.) Drawing all reasonable inferences in Plaintiff's favor, it is fair to say that CCIG knew that the brunt of any injury to Western Acceptance would be felt in Colorado. Therefore, the third element is met. *See Dudnikov*, 514 F.3d at 1077 (finding the "brunt of the injury" element met, where the defendant knew that the plaintiffs' business was located in Colorado, and therefore, knew that the effects of its actions targeting the business would be felt there).

b.   *"Arising Out Of" Requirement*

The assertion of specific jurisdiction also requires Plaintiff to prove its injuries arise out of CCIG's forum-related activities. *Old Republic*, 877 F.3d at 908. As the Tenth Circuit has explained, specific jurisdiction "is premised on something of a *quid pro quo*; in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Dudnikov*, 514 F.3d at 1078. There are "potentially two" ways to satisfy the "arising out of" requirement—(1) the "but-for" test; and (2) the "proximate cause" test. *Newsome*, 722 F.3d at 1269-70; *accord Dudnikov*, 514 F.3d at 1079 (declining to "pick"

18

one test over the other). "Under the but-for approach, any event in the causal chain leading to the plaintiff's injuries is sufficiently related to the claim to support the exercise of specific jurisdiction." *Newsome*, 722 F.3d at 1269 (quoting *Dudnikov*, 514 F.3d at 1078) (alterations omitted). "The proximate cause approach, by contrast, is considerably more restrictive and calls for the court to examine whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claims." *Id.* at 1269–70 (quoting *Dudnikov*, 514 F.3d at 1078) (alterations omitted).

CCIG challenges whether Plaintiff has adequately alleged the causation element of its tort-based claims against it. CCIG argues that Western Acceptance's injuries "primarily aris[e]" from GenAg's . . . alleged taking of the [equipment] from . . . California, not Colorado. (Doc. # 130 at 11.) However, whether Plaintiff has satisfied the Rule 8(a) pleading standard is not relevant to the present jurisdictional inquiry. *See Newsome*, 722 F.3d at 1270 ("While we recognize the potential defect in the substance of Newsome's allegations, we believe it is important to keep the 12(b)(2) and 12(b)(6) analyses distinct."); *see also Smith v. Sperling*, 354 U.S. 91, 94-95 (1957) (admonishing a lower court for holding a hearing on the merits to determine whether diversity jurisdiction existed).

In this case, Western Acceptance alleges that CCIG, through Mr. Tagami, knowingly took certain actions, including visits to Colorado, that ultimately caused injury to Western Acceptance's business in Colorado. (Doc. # 112 at ¶¶ 15–16.) The allegations concerning CCIG, based on Mr. Tagami's actions while in Colorado, form the basis for Western Acceptance's claims against him. Accordingly, Plaintiff has

satisfied the "arising out of" requirement for specific jurisdiction. *See Newsome*, 722 F.3d at 1270 (finding the "arising out of" requirement met, where the plaintiff alleged "that the individual defendants knowingly acted in Canada to destroy a company operating entirely in Oklahoma," and where that allegation "form[ed] the basis of" the plaintiff's "claim to personal jurisdiction," as well as the plaintiff's "claim on the merits").

Accordingly, Plaintiff has demonstrated sufficient minimum contacts between CCIG and Colorado to support the exercise of specific jurisdiction over it in this case.

4.     <u>Whether Exercise of Personal Jurisdiction Would Offend Traditional Notions of Fair Play and Substantial Justice</u>

Even if, as here, a plaintiff has met its burden of establishing minimum contacts, the court must "still inquire whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice." *Old Republic*, 877 F.3d at 908 (quoting *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011)); *see also Int'l Shoe*, 326 U.S. at 316. In doing so, the court must be "cognizant of the fact that, with minimum contacts established, it is incumbent on defendants to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Old Republic*, 877 F.3d at 909 (quoting *Dudnikov*, 514 F.3d at 1080). This is a fact-specific inquiry on which CCIG bears the burden of proof. *ClearOne Commc'ns Inc. v. Bowers*, 643 F.3d 735, 764 (10th Cir. 2011).

Relevant factors include: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering

fundamental social policies." *Id.* (quoting *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1161 (10th Cir. 2010)). A defendant's showing under these factors operates on a "sliding scale." *Dental Dynamics*, 946 F.3d at 1229 (citation omitted). "The weaker a plaintiff's showing with respect to minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Id.* (internal quotation marks and citation omitted). Conversely, "an especially strong showing of reasonableness may serve to fortify a borderline showing of minimum contacts." *AST Sports*, 514 F.3d at 1061 (citation omitted).

CCIG has neglected to put forth any argument, much less a "compelling case," that the court's exercise of jurisdiction over it would be unreasonable.[3] As such, CCIG has failed to carry its burden on this issue. *See ClearOne*, 643 F.3d at 764 (finding that the exercise of jurisdiction over an out-of-state defendant would not offend traditional notions of fair play and substantial justice, where the defendant "made no attempt" to address the issue in his motion to dismiss).

Based on the foregoing, the Court finds that CCIG has sufficient minimum contacts with Colorado to support the exercise of specific personal jurisdiction over it, and the assertion of such jurisdiction comports with federal due process requirements. Accordingly, the Court denies CCIG's motion to dismiss for lack of personal jurisdiction.

---

[3] The Court notes that CCIG's Motion included a heading labeled: "Due Process Rights and Notions of 'Fair Play and Substantial Justice' Would be Violated by the Exercise of Personal Jurisdiction Based on the Minimum Contacts of Others." (Doc. # 130 at 5.) However, the section discusses the no imputed contacts rule, not the relevant factors to evaluate whether exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice.

**B.    DEFENDANT CCIG'S MOTION TO DISMISS**

CCIG also moved to dismiss all claims asserted against it for failure to state a claim. (Doc. # 130.) CCIG's Motion is based primarily on three arguments, each of which is discussed below.

      1.    <u>Alleged Lack of Specific Allegations Against CCIG</u>

First, CCIG argues that the Second Amended Complaint must be dismissed because it "entirely omits allegations of CCIG's independent action or wrongdoing separate and apart from the actions of the alleged principal defendant, GenAg." (Doc. # 130 at 12–13.) This argument is without merit.

As set forth above, Plaintiff has sufficiently alleged that CCIG, through its Chief Executive Officer, committed intentional acts conferring personal jurisdiction over CCIG. Further, as already discussed, a corporation can be held liable for the actions of its agents, including its officers and directors. *See Colorado Coffee Bean*, 251 P.3d at 29; *Wright Med. Tech.*, 2019 WL 4751807, at *5. In this case, Plaintiff alleges that Mr. Tagami, acting on behalf of CCIG, committed tortious acts directed at Western Acceptance. (Doc. # 112 at ¶¶ 12, 14–16.) These allegations do not warrant wholesale dismissal of all the claims against CCIG.

      2.    <u>Superseding Cause</u>

CCIG also argues that all the claims against it fail because the Second Amended Complaint "admits that the ultimate injury to Plaintiff was caused by a superseding cause." (Doc. # 130 at 12, 14.) Specifically, CCIG contends that the allegations in the Second Amended Complaint pertaining to Sonoma "sever the causal link between the

alleged actions of CCIG and Plaintiff's alleged ultimate harm," thereby establishing that Sonoma was an intervening cause that breaks any chain of causation that might be attributed to Mr. Tagami. (*Id.* at 14.)

Intervening, or superseding, cause is an affirmative defense. *White v. Caterpillar, Inc.*, 867 P.2d 100, 109 (Colo. App. 1993). It is well-settled that "[a] plaintiff has no burden to anticipate an affirmative defense and plead facts negating it." *Rivero v. Bd. of Regents of Univ. of N.M.*, 950 F.3d 754, 759-60 (10th Cir. 2020); *accord Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) ("A plaintiff need not anticipate in the complaint an affirmative defense that may be raised by the defendant; it is the defendant's burden to plead an affirmative defense."). A claim is subject to dismissal at the pleadings stage based on an affirmative defense, "only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Fernandez*, 883 F.3d at 1299; *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965) ("If the defense appears plainly on the face of the complaint itself, the motion [to dismiss for failure to state a claim] may be disposed of under [Rule 12(b)].").

In Colorado, "[a]n intervening cause only relieves the defendant of liability if it was not reasonably foreseeable." *Redden v. SCI Colo. Funeral Servs., Inc.*, 38 P.3d 75, 81 (Colo. 2001) (citing *Webb v. Dessert Seed Co.*, 718 P.2d 1057, 1062-63 (Colo. 1986)). As relevant in this case, "[f]oreseeability is ordinarily a question of fact." *Heinrich v. Master Craft Eng'g, Inc.*, 131 F. Supp. 3d 1137, 1148 (D. Colo. 2015) (citing *Westin Operator, LLC v. Groh*, 347 P.3d 606, 614 n.5 (Colo. 2015)).

In the instant case, the Second Amended Complaint does not "admit" that Sonoma's alleged actions—namely, of permitting "unauthorized individuals" to "illegally" take the Distillate Unit from its California facility—were unforeseeable. Indeed, Plaintiff alleges that the Distillate Unit was taken from Sonoma's facility by GenAg representatives, pursuant to a "scheme" that involved Mr. Tagami, who Plaintiff alleges was working on behalf of CCIG. (Doc. # 112 at ¶¶ 49–50.) Therefore, because the face of the Second Amended Complaint does not unequivocally establish that the actions by Defendants Sonoma and GenAg were unforeseeable, CCIG's motion to dismiss based on the affirmative defense of superseding cause is denied. *See Bistline v. Parker*, 918 F.3d 849, 889 (10th Cir. 2019) (holding that a district court erred in dismissing claims on affirmative defense grounds, where the face of the complaint did not establish the elements of the affirmative defense).

      3.    <u>Inadequacy of Conspiracy Claim</u>

Finally, CCIG moves to dismiss the civil conspiracy claim against it. (Doc. # 130 at 12–13.) To state a claim for civil conspiracy under Colorado law, a plaintiff must allege: "(1) two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *In re Qwest Commc'ns Int'l, Inc. Sec. Litigation*, 387 F. Supp. 2d 1130, 1153 (D. Colo. 2005). Further, the complaint must "allege specific facts showing agreement and concerted action among defendants." *DTC Energy Grp., Inc. v. Hirschfeld*, 420 F. Supp. 3d 1163, 1182 (D. Colo. 2019) (quoting *Durre v. Dempsey*, 869 F.2d 543, 545

(10th Cir. 1989)). A "plaintiff cannot succeed on its claims for civil conspiracy without showing that each defendant agreed to do something in furtherance of the conspiracy, knowing of its improper purpose." *Powell Prod., Inc. v. Marks*, 948 F. Supp. 1469, 1480 (D. Colo. 1996). Plaintiff has failed to meet this standard.

Plaintiff's conspiracy claim relies on vague, conclusory allegations. Rather than alleging specific facts showing that Defendants "agreed to do something in furtherance of the conspiracy, knowing of its improper purpose," *Powell Prod.*, 948 F. Supp. at 1480, Plaintiff simply concludes that Plaintiffs "were conspiring" against it:

> GenAg and CCIG, through their co-ownership, co-Agents/employees, and co-actions, via meetings with Plaintiff and conversations with Plaintiff were conspiring to learn of Plaintiff's business, its method for operating, its use and ownership of equipment, and its trade secrets so that GenAg, the GenAg Agents, and CCIG could eventually take Plaintiff's Heaters and Distillate Unit and Plaintiff's money for their own use to Plaintiff's detriment.

(Doc. # 112 at ¶ 51.)

Plaintiff offers no facts to explain how it came to this conclusion. Indeed, these allegations are so vague that it is impossible to tell what each defendant is alleged to have done "in furtherance of the conspiracy." *Powell Prod.*, 948 F. Supp. at 1480. These vague allegations fail to nudge Plaintiff's claim "across the line from conceivable to plausible," so it is subject to dismissal. *Twombly*, 55 U.S. at 570. Accordingly, the Court dismisses the claim for conspiracy against CCIG.

C.    **DEFENDANT STIG WESTLING'S MOTION TO DISMISS**

Defendant Stig Westling seeks dismissal of all the claims against him for failure to state a claim. (Doc. # 172.) For the following reasons, the Court grants Westling's Motion.

As an initial matter, Plaintiff argues that the claims against Mr. Westling should stand because the claims against Mr. Becker were not dismissed. However, "[w]hen a defendant asserts complex claims against multiple defendants, it is "particularly important" to "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations." *Bristow Endeavor Healthcare, LLC v. Blue Cross & Blue Shield Ass'n*, 691 F. App'x 515, 519 (10th Cir. 2017) (citation and internal quotations omitted).

The allegations in the Second Amended Complaint specific to Mr. Westling are particularly sparse.[4] Plaintiff identifies Mr. Westling as an "agent" of GenAg, but it does not identify how Mr. Westling was affiliated with GenAg. (Doc. # 112 at ¶¶ 11, 14.) Plaintiff also alleges that Mr. Westling personally visited Western Acceptance's Colorado facility. (*Id.* at ¶ 14.) There are no other allegations in the Second Amended Complaint specific to Mr. Westling. Against this backdrop, the Court examines each of the claims against Mr. Westling.

---

[4] The Court looks only to the allegations in the Second Amended Complaint. *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013). The Court will not consider the additional allegations Plaintiff included in its response. *See In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) ("The plaintiffs may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss.").

1.     Civil Theft

Plaintiff brought a cause of action against Mr. Westling pursuant to Colo. Rev. Stat. § 18-4-405, for civil theft. (Doc. # 112 at ¶¶ 43–46.) Mr. Westling seeks dismissal of this claim, on the basis that the Complaint's allegations fail to state a claim against him for civil theft. (Doc. # 172 at 5–8.)

Colorado's civil theft statute permits the rightful owner of stolen property to recover that property from the possession of another person. Colo. Rev. Stat. § 18-4-405; *Bermel v. BlueRadios, Inc.*, 440 P.3d 1150, 1157 (Colo. 2019) ("Section 18-4-405 provides the rightful owner of stolen property a private right of action against the wrongdoer without requiring proof of a criminal conviction."). "To recover under the statute, the owner must prove that the taker committed acts constituting at least one of the statutory crimes of theft, robbery, or burglary." *Bermel*, 440 P.3d at 1156–57 (Colo. 2019) (citation omitted); *Itin v. Unger*, 17 P.3d 129, 134 (Colo. 2000) (holding that the statute provides an owner of property with a private remedy that "requires proof a specified criminal act").

"A person commits theft under [the statute] when he or she 'knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception,' and acts intentionally or knowingly in ways that deprive the other person of the property permanently." *Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 608 (Colo. 2016) (quoting Colo. Rev. Stat. §§ 18-4-401(1)(a)-(d)). A civil theft claim may be asserted against the taker of the property, as well as against any person who is in possession of the stolen property. Colo. Rev. Stat. § 18-4-405.

In this case, the Second Amended Complaint alleges that "persons from GenAg showed up at Plaintiff's Colorado Springs facility and took heaters and other component parts . . . necessary for the distillate process;" that one of GenAg's agents "told Plaintiff that after completion of the Distillate Unit, GenAg wanted to take possession of it;" that Plaintiff "vehemently refused;" that the Distillate Unit was thereafter "taken by Defendants;" that "Defendant[s] refuse to tell Plaintiff where the property is and refuse[] to return the property to Plaintiff;" that Plaintiff is the "owner of the property which was stolen;" that "GenAg Agents" and GenAg "are responsible for stealing the property;" and that the GenAg Defendants "are believed to be in actual and/or constructive possession of the property." (Doc. # 112 at ¶¶ 18, 21–23, 45.)

Notably, there are no alleged facts explaining how Mr. Westling could be liable for the tort of civil theft. Although Plaintiff includes Mr. Westling in its definition of "GenAg Agents," Plaintiff offers no alleged facts to explain how Mr. Westling was involved in any of the elements of its civil theft claim or why he should be lumped together with all defendants. Accordingly, the allegations against Mr. Westling are too vague and conclusory to state a claim for relief against him for civil theft. *Twombly*, 55 U.S. at 570.

2.   Conversion

Western Acceptance also brought a claim for conversion against multiple defendants, including Mr. Westling, for "negligently or intentionally exercis[ing] unauthorized dominion over" its property. (Doc. # 112 at ¶ 54.) Mr. Westling moved to dismiss the conversion claim against him. (Doc. # 172 at 8–10.)

28

"Conversion under Colorado law is 'any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another.'" *Scott v. Scott*, 428 P.3d 626, 634 (Colo. App. 2018) (quoting *Itin*, 17 P.3d at 135 n.10). To state a claim for conversion, a plaintiff must allege that "(i)[ the defendant] exercised dominion and control over property; (ii) that property belonged to [the plaintiff]; (iii) [the defendant's] exercise of control was unauthorized; (iv) [the plaintiff] demanded return of the property; and (v) [the defendant] refused to return it." *Id.* (citations omitted). "Although the act of conversion takes place at the time the converter takes dominion over the property, predicates to a successful claim for conversion are the owner's demand for the return of the property, and the controlling party's refusal to return it." *Glenn Arms Assocs. v. Century Mortg. & Inv. Corp.*, 680 P.2d 1315, 1317 (Colo. App. 1984).

Mr. Westling is once again lumped together as a "GenAg Agent" in Plaintiff's claim for conversion. However, there are no allegations specific to Mr. Westling with respect to how he could be liable for conversation. In the face of such vague and conclusory allegations, Plaintiff has failed to state a claim for relief against Mr. Westling for civil conversion. *Twombly*, 55 U.S. at 570.

3.   Unjust Enrichment

Finally, Mr. Westling moves to dismiss Plaintiff's unjust enrichment claim against him. (Doc. # 172 at 10–11.) "Unjust enrichment is a quasi-contractual, equitable remedy designed to undo a benefit conferred on one party at the unfair expense of another party." *Pulte Home Corp. v. Countryside Cmty. Ass'n, Inc.*, 382 P.3d 821, 833 (Colo.

2016). To state a claim for unjust enrichment under Colorado law, a plaintiff must allege: "(1) [t]he defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." *City of Arvada ex rel. Arvada Police Dep't v. Denver Health & Hosp. Auth.*, 403 P.3d 609, 616 (Colo. 2017) (quoting *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008)).

Once again, Plaintiff has not alleged any facts specific to Mr. Westling to support an unjust enrichment claim against him. Given the sparse allegations against Mr. Westling, the allegations in the complaint are insufficient to state a claim for relief against him.

    4.   <u>Conspiracy</u>

Mr. Westling did not move to dismiss the remaining claim against him for civil conspiracy. Mr. Westling's failure to move to dismiss the conspiracy claim appears to be an oversight. In his reply, Mr. Westling stated that the "Court has already dismissed plaintiff's claim for civil conspiracy against defendants." (Doc. # 176 at 10.) However, the Court dismissed the civil conspiracy claims against Mr. Tagami, Defendant General Agriculture, Inc., and Defendant Callaghan Becker. (Doc. # 154.) The Court did not dismiss the conspiracy claim against the remaining defendants.

In any event, in light of the Court's dismissal of the claim for civil conspiracy against CCIG, *supra*, the civil conspiracy claim has now been dismissed against all other defendants except Mr. Westling. Mr. Westling cannot be in a conspiracy with himself. *See DTC Energy*, 420 F. Supp. 3d at 1182. Further, the Court finds that the

vague allegations against Mr. Westling are too conclusory to state a claim for relief for conspiracy. *Twombly*, 55 U.S. at 570. Accordingly, the Court dismisses the conspiracy against Mr. Westling. *McKinney v. State of Okl., Dep't of Hum. Servs., Shawnee OK*, 925 F.2d 363, 365 (10th Cir. 1991) (holding that a district court may dismiss *sua sponte* under Rule 12(b)(6) "when it is patently obvious that the plaintiff could not prevail on the facts") (internal quotations and citation omitted).

## IV.   CONCLUSION

For the foregoing reasons, CCIG's Motion to Dismiss (Doc. # 130) is GRANTED IN PART and DENIED IN PART. Mr. Westling's Motion to Dismiss (Doc. # 172) is GRANTED. The Court hereby ORDERS as follows:

- Defendant California Capital & Investment Group, Inc.'s FRCP 12(b) Motion to Dismiss Plaintiff's Second Amended Complaint for Lack of Personal Jurisdiction and Failure to State a Claim (Doc # 130) is GRANTED IN PART and DENIED IN PART. The civil conspiracy claim against Defendant California Capital & Investment Group, Inc. is DISMISSED, without prejudice. The Motion is denied in all other respects.

- Defendant Stig Westling's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. # 172) is GRANTED, as stated above. The claims against Mr. Westling are DISMISSED, without prejudice.

- Plaintiff shall have two weeks from the date of this Order to file a motion for leave to amend and proposed amended complaint.

DATED: March 18, 2022

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge

31