IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 20-cv-00052-CMA-MDB

WESTERN ACCEPTANCE, LLC,

    Plaintiff,

v.

GENERAL AGRICULTURE, INC., *f/k/a* General Agriculture, LLC,
CALLAGHAN BECKER,

    Defendants.

---

### ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

---

This matter is before the Court on Plaintiff Western Acceptance LLC's ("Western") Motion for Entry of Default Judgment. (Doc. # 224.) For the reasons detailed below, the Court grants the motion.

## I.    BACKGROUND

This is a business dispute. Western, a hemp extraction business, contracted with SXIP, LLC for the design and manufacture of a distillate unit. (Doc. # 224-2 at ¶ 4; Doc # 224-5 at ¶ 8.) Later, SXIP and all its contractual obligations were purchased by Defendant General Agriculture, Inc., *f/k/a* General Agriculture, LLC ("GenAg"). (Doc. # 224-2 at ¶¶ 7–8; Doc. # 224-3; Doc. # 224-5 at ¶¶ 18–19, 21.) Western paid in full for the distillation machine, as well as an additional $100,000 following GenAg's acquisition of SXIP. (Doc. # 224-2 at ¶¶ 5, 9.) However, GenAg never delivered the distillate unit

and removed other equipment, valued at $180,000 from Western's facility. (*Id.* at ¶¶ 11–12; Doc. # 224-5 at ¶¶ 32–35.)

On January 7, 2020, Western initiated this suit. (Doc. # 1.) The operative Third Amended Complaint asserts four claims for relief: (1) breach of contract, (2) civil theft, (3) conversion, and (4) unjust enrichment. (Doc. # 184 at ¶¶ 26–45.) GenAg, represented by counsel at the time, timely Answered. (Doc. # 191.) GenAg has also previously asserted five counterclaims against Western: (1) breach of contract, (2) promissory estoppel, (3) civil theft, (4) conversion, and (5) unjust enrichment. (Doc. # 157 at ¶¶ 92–125.) However, less than four months after GenAg Answered Western's Third Amended Complaint, its counsel filed a Motion to Withdraw (Doc. # 204), which the Court granted (Doc. # 205). No new counsel has entered an appearance on behalf of GenAg and on September 16, 2022, Western moved for default judgment. (Doc. # 206.) The motion was referred (Doc. # 207), and on January 26, 2023, Magistrate Judge Maritza Dominguez Braswell Ordered GenAg to show cause in writing, on or before February 9, 2023, as to why sanctions should not be imposed against it based on its lack of counsel. (Doc. # 211.) Judge Dominguez Braswell warned GenAg that failure to timely respond and show cause would result in a Recommendation that default and default judgment be entered against it. (*Id.*)

Citing GenAg's lack of response to Western's Motion or her Order and pursuant to D.C.COLO.LAttyR 5(b), as well as Federal Rules of Civil Procedure 16(f)(1) and 37(b)(2)(A)(vi), Judge Dominguez Braswell issued the Recommendation she had warned of on April 11, 2023. (Doc. # 221.) No timely objection was filed, and this Court

adopted the Recommendation as an Order of this Court on May 1, 2023. (Doc. # 222.) The Clerk entered Default the same day. (Doc. # 225.) The Court also directed Western to file a motion and supporting documents outlining its requested damages. (Doc. # 222 at 3.)

Western complied with the Court's directive on June 1, 2023, filing the instant Motion and outlining its requested damages. (*Id.* at 3–8.) Additionally, Western avers that it is entitled to final judgment in its favor on GenAg's counterclaims. (*Id.* at 8.) To date, no new counsel has entered an appearance on behalf of GenAg, and GenAg has not participated in this litigation since its counsel's withdrawal was granted nearly a year ago. (Doc. ## 204–05.)

## II. DISCUSSION

### A. DEFAULT JUDGMENT

Before granting a motion for default judgment, the Court must ensure that it has subject matter jurisdiction over the action and personal jurisdiction over the defaulting defendant. *See Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202–03 (10th Cir. 1986). The Court notes that unlike the granting of Default Judgment in the Fed. R. Civ. P. 55 context, when Default Judgment is granted against a party as a sanction under Rule 37, the Court is not required to take a plaintiff's well-pleaded complaint as true for the purpose of determining damages. *See Supragenix LLC v. Garrity*, 2016 WL 1171525, at *1 (D. Utah Mar. 24, 2016) (declining to accept plaintiff's well-pleaded facts as true when default judgment was warranted for discovery abuses, as opposed to failure to answer the complaint). However, the Court "accepts as undisputed any facts set forth

3

by the moving party in affidavits and exhibits." *Bricklayers & Trowel Trades Int'l Pension Fund v. Denver Marble Co.*, No. 16-cv-02065-RM, 2019 WL 399228, at *2 (D. Colo. Jan. 31, 2019).

    1.    <u>Jurisdiction</u>

Magistrate Judge Kathleen M. Tafoya, in her Recommendation (Doc. # 148) that GenAg's Motion to Dismiss Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Doc. # 115) be granted in part and denied in part, previously concluded that this Court has subject matter jurisdiction over the claims against GenAg pursuant to 28 U.S.C. § 1332. (Doc. # 148 at 7–10.) The Court adopted and affirmed that portion of Judge Tafoya's Recommendation. (Doc. # 154 at 9.)

The Court also finds that it has personal jurisdiction over GenAg because service was adequate, *see Reg'l Dist. Council v. Mile High Rodbusters, Inc.*, 82 F. Supp. 3d 1235, 1241 (D. Colo. 2015), and exercising jurisdiction over Defendant comports with constitutional due process demands, *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

First, the Court finds that Western's service of process on GenAg was complete, adequate, and in accordance with Fed. R. Civ. P. 4. In fact, GenAg Answered Western's Complaint and entered multiple substantive filings in this case prior to absconding from the litigation in 2022. *See, e.g.*, (Docs. ## 47–48, 115–16, 157, 191.) Next, the Court finds that exercising jurisdiction over GenAg comports with constitutional due process demands. GenAg availed itself of the privilege of transacting business within Colorado, and a substantial part of the events or omissions giving rise to the claims set forth in this

lawsuit occurred within the State of Colorado. Accordingly, the Court has personal jurisdiction over GenAg.

2. <u>Damages</u>

Default judgment typically cannot be entered until the amount of damages has been ascertained. *See Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984). One of the main reasons for this requirement is to prevent plaintiffs who obtain default judgments from receiving more in damages than is supported by actual proof. *Id.* at 773 n.2. In making an independent determination of the amount of damages, "the court may rely on detailed affidavits or documentary evidence." *Id.* (quoting *Breaking the Chain Found., Inc. v. Capitol Educ. Supp., Inc.*, 589 F. Supp. 2d 25, 28 (D.D.C. 2008)); *Lopez v. Highmark Constr., LLP*, No. 17-cv-01068-CMA-MLC, 2018 WL 1535506, at *3 (D. Colo. Mar. 29, 2018) (same).

Under Colorado law, there exists a "general rule against double recovery for the same injuries." *Whispering Pines W. Condo. Homeowners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, No. 19-CV-03238-REB-MEH, 2020 WL 1076126, at *3 (D. Colo. Mar. 6, 2020) (citing *Am. Family Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185 (Colo. 2018), *recommendation adopted Whispering Pines W. Condo. Homeowners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, No. 19-CV-03238-REB-MEH, 2020 WL 9432883 (D. Colo. Aug. 3, 2020). Recovery is for the "same wrong" if the facts of each claim are identical rather than "factually separable." *Barriga*, 418 P.3d at 1186.

All three of Western's claims rely on an identical factual basis. *See generally* (Doc. # 224.) Therefore, the Court concludes that to avoid double recovery, Western

5

can recover on only one claim. *See, e.g.*, *Gentry v. Kostecki*, No. 20-cv-1284-WJM-STV, 2022 WL 168704, at *3 (D. Colo. Jan. 19, 2022); *Jones v. Marquis Prop., LLC*, 212 F. Supp. 3d 1010, 1019 (D. Colo. 2016). Because the civil theft claim would permit Western to recover treble damages, the highest amount under the three claims, the Court will assess this claim first.

The Court finds that the facts set forth by the affidavits and exhibits attached to Western's instant Motion—including the Declaration of Thomas McCann (Doc. # 224-2), excerpts of the Asset Purchase Agreement between SXIP and GenAg (Doc. # 224-3), excerpts of the deposition of Stig David Westling (Doc. # 224-4), and the Declaration of Tiffany Weaver (Doc. # 224-5)—provide a sufficient basis for default judgment to be entered on Western's civil theft claim. *See Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010); *see also generally Gentle Giant Moving Co., Inc. v. Gentle Giant Moving and Storage Inc.*, No. 17-cv-02762-PAB-NRN, 2019 WL 4200397 (D. Colo. Sept. 4, 2019) (concluding that, although not required to take the plaintiff's well-pleaded allegations as true when default judgment was warranted under Rules 16 and 37, plaintiff had provided sufficient evidence to demonstrate it was entitled to damages).

To succeed on a claim for civil theft, Western must demonstrate that GenAg obtained control over Western's property under circumstances amounting to "theft, robbery, or burglary." Colo. Rev. Stat. 18-4-405. Therefore, civil theft incorporates the elements of criminal theft—that the defendant "'knowingly, obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception,'

and acts intentionally or knowingly in ways that deprive the other person of the property permanently." *Scott v. Scott*, 428 P.3d 626, 633 (Colo. App. 2018).

Both Mr. McCann and Ms. Weaver attest to the existence of a contract between Western and SXIP for the distillation machine. (Doc. # 224-2 at ¶ 4; Doc. # 224-5 at 8.) These declarations, in conjunction with the Asset Purchase Agreement, establish that that contract was acquired by GenAg when it purchased SXIP. (Doc. # 224-2 at ¶¶ 7–9; Doc. # 223-3; Doc. # 224-5 at ¶¶ 18–19, 21–22.) Mr. McCann also attests to paying SXIP $2,000,000 under the initial contract, plus an additional $100,000 to GenAg for completion of the distillate unit—thereby demonstrating performance by Western. (Doc. # 224-2 at ¶¶ 5, 9.)

Despite this contract, GenAg never delivered the distillation machine to Western—instead, GenAg maintained control of the unit after its assembly without Western's authorization. Mr. Westling, an agent of GenAg, testified during his deposition that GenAg moved parts of the distillation machine from a third party's facility to GenAg's own facility. (Doc. # 224-3 at 24, 30.) Ms. Weaver attested to seeing the distillate unit at GenAg's facility in California. (Doc. # 224-5 at ¶¶ 31–32.) She also states that it "became clear to [her] that GenAg had no intention of returning or delivering the distillation portion of the Machine to Western Acceptance" and that after making multiple demands that GenAg fulfil its contractual obligations, Ms. Weaver was terminated from employment. (*Id.* at ¶¶ 34–35.) Additionally, both Mr. McCann and Ms. Weaver attest to equipment from Western's facility being taken by GenAg and retained at GenAg's facility in California. (Doc. # 224-2 at ¶ 12; Doc. # 224-5 at ¶ 33.)

Taken together these facts are sufficient to demonstrate that GenAg knowingly retained and exercised control over Western's distillation machine and other equipment without authorization and in ways that deprive Western of its property permanently. Colo. Rev. Stat. 18-4-405; *Scott*, 428 P.3d at 633. Accordingly, the Court concludes that Western has established default judgment is warranted on its civil theft claim.

The value of the distillate unit is $2,100,000 (Doc. # 224-2 at ¶¶ 5, 9), and the value of the other equipment taken by GenAg is $180,000 (*id.* at ¶ 12), for a total of $2,280,000. Under the civil theft statute, Western is entitled to treble damages. Colo. Rev. Stat. § 18-4-405; *Itin v. Ungar*, 17 P.3d 129, 133 (Colo. 2000). Western is therefore entitled to a total of $6,840,000 in damages on its civil theft claim against GenAg.

Western also seeks an award of prejudgment interest. (Doc. # 224 at 7.) "It is well-established that a federal court sitting in diversity applies state law, not federal law, regarding the issue of prejudgment interest." *AE, Inc. v. Goodyear Tire & Rubber Co.*, 576 F.3d 1050, 1055 (10th Cir. 2009) (quoting *Loughridge v. Chiles Power Supply Co.*, 431 F.3d 1268, 1288 (10th Cir. 2005)) (alterations omitted). Colorado law authorizes a prejudgment interest rate of eight percent per annum, compounded annually. Colo. Rev. Stat. § 5-12-102. The court finds this rate to be appropriate here, given that Western has been deprived of the value of the distillation machine it paid for, as well as the equipment that GenAg took from its facility. Western acknowledges that the exact date of GenAg's civil theft is unknown and therefore requests prejudgment interest be calculated from the date it filed its initial complaint. (Doc. # 224 at 4 n.3.) The Court agrees and finds that Western is entitled to prejudgment interest of eight percent,

running from January 7, 2020, through the date on which final judgment is entered. "Because a party's entitlement to punitive damages does not arise unless and until such damages are awarded by the trier of fact, . . . prejudgment interest is not allowed on punitive damages. *Becker & Tenenbaum v. Eagle Restaurant Co., Inc.*, 946 P.2d 600, 602 (Colo. App. 1997) (citing *Seaward Construction Co. v. Bradley*, 817 P.2d 971 (Colo.1991)). Thus, the Court's calculation of prejudgment interest is determined by the base damages amount of $2,280,000.

Finally, Western seeks an award of post judgment interest. (*Id.* at 7.) The federal post judgment interest rate applies in diversity cases. *Latham v. First Marine Ins. Co.*, 16 Fed. Appx. 834, 841 (10th Cir.2001). The Court will order post judgment interest at the rate provided by 28 U.S.C. § 1961 from the date of the judgment until it is paid in full.

    3.    <u>Counter Claim</u>

The Court agrees that for the reasons stated in Magistrate Judge Dominguez Braswell's Recommendation (Doc. # 221) and the Court's Order Adopting and Affirming that Recommendation (Doc. # 222), Western is entitled to default judgment in its favor on GenAg's counterclaims. *See* (Doc. # 157 at 12–15.)

### III.    **CONCLUSION**

For the foregoing reasons, the Court ORDERS as follows:

- Plaintiff Western Acceptance LLC's Motion for Entry of Default Judgment (Doc. # 224) is GRANTED;
- Western is awarded treble damages totaling $6,840,000;

- Western is awarded prejudgment interest from January 7, 2020, through the date of entry of judgment in this matter, at the rate of eight percent per annum, compounded annually for a total of $719,304.56.[1]

- Accordingly, the Clerk of Court is DIRECTED to enter default judgment in favor of WESTERN ACCEPTANCE, LLC and against Defendant GENERAL AGRICULTURE, INC., *f/k/a* General Agriculture, LLC, in the total amount of $7,559,304.56 on Western's claims against GenAg. GenAg's counterclaims are dismissed.

---

[1] The Court's calculation regarding prejudgment interest is set forth below:

| Period | Compensatory Amount | Prejudgment Interest Rate | Interest |
| --- | --- | --- | --- |
| 1/7/2020–1/6/2021 | $2,280,000.00 | 8% | $182,400.00 |
| 1/7/2021–1/6/2022 | $2,462,400.00 | 8% | $196,992.00 |
| 1/7/2022–1/6/2022 | $2,659,392.00 | 8% | $212,751.36 |
| 1/7/2023–7/28/2023 | $2,872,143.36 | 8% x (202 days / 365 days in a year) | $127,161.20 |
| | | **Total Prejudgment Interest** | $719,304.56 |

- Western is entitled to post judgment interest at the rate of 5.33% as provided by 28 U.S.C. § 1961 from the date of the judgment until it is paid in full.[2]

DATED: July 28, 2023

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge

---

[2] The applicable weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding today's date (the week ending July 21, 2023) is 5.33%. 28 U.S.C. § 1961; *see* Selected Interest Rates Instruments, Yields in percent per annum: Weekly, *available at* https://fred.stlouisfed.org/release/tables?rid=18&eid=290&od=2023-07-21# (last visited July 27, 2023); *see also* Fees, Payments, and Interest Rates https://www.mad.uscourts.gov/finance/fees.htm (last visited July 27, 2023).